## OWNERSHIP OF GRAVEL WASHED FROM ONE SIDE OF A STREAM TO THE OTHER.

Court of Appeals for Madison County.

E. E. LIMLE AND ANDREW RESCHER v. WILLIS ROBISON.

Decided, March 2, 1915.

*Riparian Rights—Title of Owners Abutting on Either Side of a Non-navigable Stream—Extends to the Middle Thread of Low Water—Washing Away of Gravel on One Bank and a Deposit of Gravel on the Other Bank Not Proof of Avulsion.*

1. The title of adjoining owners of land which extends to certain fixed monuments upon opposite banks of a small non-navigable stream and thence along such banks respectively, is carried in each proprietor to the middle thread of the stream at low water.
2. Proof of the caving in and washing away of gravel deposits upon one bank of such stream, and the sudden formation of a gravel bar upon the opposite bank at a point in the flood water channel toward which the current of the stream carried the washings, is not sufficient proof of identity to establish a case of avulsion, and the gravel, therefore, belongs to the proprietor of. the soil upon which it rests.

*I. N. Abernathy,* for plaintiffs in error.
*McCloud & Lincoln* and *Rankin & Rankin,* contra.

ALLREAD, J.; FERNEDING, J., and KUNKLE, J., concur.

The controversy in this case arises over the ownership of certain gravel taken from a bar in Deer Creek, a small non-navigable stream.

Robison and Limle are adjoining owners of land, the boundaries of which respectively extend to certain fixed monuments on each bank of Deer Creek and thence along the banks of said stream.

These deeds under the established law of this state would carry the boundary line of each proprietor to the middle thread of the stream at low water. *Lamb* v. *Rickets,* 11 Ohio, 311; *Gravit* v. *Chambers,* 3 Ohio, 496; *Niehaus* v. *Shepherd,* 26 Ohio St., 40; *June* v. *Purcell,* 36 Ohio St., 396.

The question of boundary as presented by the evidence is fairly and correctly stated by counsel for plaintiff in error in the following paragraph of this brief:

''The water in this stream, therefore, when it was low constituted but a small channel but a few feet in width, between Limle's bank and the gravel bar. To take that as the middle of the stream as the court finally instructed the jury, would necessarily give Robison all the gravel in this bar and the jury was so instructed to find.''

The instruction of the court to the jury both in the general charge and in the answers to questions of the jury was substantially to the effect that the center of the stream at the time the gravel was taken or at the time of the trial, was the boundary line and this, while not absolutely correct, was favorable to the plaintiff in error rather than against him.

This brings us to the second and most important point of difference between counsel, namely, the question of accretion and avulsion.

Upon this point the trial court charged the jury in substance that the·gravel in controversy belonged to the landowner upon whose premises it was found. This was, as counsel for plaintiff in error contends, practically an instruction to return a verdict for the plaintiff below.

Was this instruction correct?

The testimony shows that prior to the great flood of March, 1913, there was a gravel bank of considerable proportion on the lands of Limle and that after the flood a portion of Limle's gravel bank was washed away by the flood and that after the flood had subsided, the gravel bar in controversy was found beyond the low·water channel of the stream and nearly opposite the Limle gravel bank.

The evidence also shows that there were various other gravel deposits in the banks and channel of Deer Creek above the bar in controversy which were washed out to some extent in the same flood. The testimony of Limle is to the effect that he saw some of the bank on his property cave into the stream

during the flood and carried by the action of the water in the direction of this bar.

Controversies growing out of the shifting of earth by the action of the waters in running streams have given rise to the doctrines of accretion and avulsion.

In the cases of accretion owing to the difficulty of tracing the original source, the law awards it to the owner of the land to which it becomes attached, while in cases of avulsion the original owner still holds the title.

Accretion is said to be the deposit by gradual and imperceptible process, while avulsion involves the transfer of a considerable quantity of earth beyond or over the channel of the stream.

Accretion is the usual and ordinary case of the shifting of earth by the action of the waters and avulsion is of a somewhat extraordinary nature.

Avulsion may exist first when the stream changes its course, and second, where a considerable quantity of earth is carried *en masse* across the channel and attached to the opposite shore.

As applied to the second class, we may adopt the following definition:

"Avulsion is the removal of a considerable quantity of earth from the land of one proprietor and its deposit upon or annexation to the land of another, suddenly and by the perceptible action of the water." 40 Cyc., 625.

To this definition may be added the following from the syllabus in the case of *State* v. *Pulp Co.*, 119 Tenn., 47, 53.

"Where the change of the channel of a river is made suddenly and violently and is visible and the effect is certain, it is said to be by avulsion."

In *Coulthard* v. *Davis*, 101 Iowa, 625, it is held:

"Land detached from one side of a river by sudden change in the channel and left connected with land on the other side in such manner as to be capable of identification, is not accretion."

In the latter case the strip of land carried across the channel was a mile or more in width holding trees varying in size up to two feet in diameter.

The question of identification must necessarily play an important part in applying the doctrine of avulsion. For without identification, there can be no avulsion in a legal sense.

This feature is fully discussed in the celebrated case of *Nebraska* v. *Iowa,* 143 U. S., 359, in the opinion of Mr. Justice Brewer on page 369. In the course of the opinion in respect to the shifting of the banks of the Missouri river by flood waters, it is said:

"That while the disappearance, by reason of this process, of a mass of bank may be sudden and obvious, there is no transfer of such a solid body of earth to the opposite shore, or any thing like an instantaneous and visible creation of a bank on that shore. The accretion, whatever may be the fact in respect to the diminution, is always gradual and by the imperceptible deposit of floating particles of earth. There is, except in such cases of avulsion as may be noticed hereafter, in all matter of increase of bank, always a mere gradual and imperceptible process. There is no heaping up at an instant, and while the eye rests upon the stream, of acres or rods on the forming side of the river. No engineering skill is sufficient to say where the earth in the bank washed away and disintegrating into the river finds its rest and abiding place. The falling bank has passed into the floating mass of earth and water, and the particles of earth may rest one or fifty miles below, and upon either shore. There is, no matter how rapid the process of subtraction or addition, no detachment of earth from the one side and deposit of the same upon the other."

The process so described was held to be accretion and not avulsion. See also *Willey* v. *Lewis,* 28 Bull., 104.

In the case at bar it is conceded on page 10 of the brief of counsel for plaintiff in error that there was no change of the course of the stream. To make out a case of avulsion, therefore, it was necessary to show not only the sudden disappearance of the Limle bank, but that it was carried *en masse* and in a visible manner to the opposite bank. This the evidence does not establish.

There is, of course, a probability that when Limle's gravel bank fell into the flood waters of Deer Creek, a portion of it may have found lodgment on the gravel bar in controversy. But that is purely speculative. It is also probable that Limle's gravel, or at least a portion of it, may have been carried by the waters to other points and deposited. And it is also probable that other gravel may have found lodgment on the gravel bar in controversy and that the gravel bar instead of being composed exclusively of Limle's gravel was in fact a commingling of the washings of this stream from various sources the identity of which can not be legally established.

The case, therefore, falls within the principle of accretion and the trial court was justified in determining as a matter of law that the gravel belonged to the owner of the land to which it had become attached when the waters had subsided.

There is complaint as to the charge of the court upon the question of burden of proof, but this was not material in view of the fact that the verdict and judgment under the law as we interpret it, is in accord with the practically undisputed facts of the case.

Finding no error, the judgment of the court of common pleas is affirmed.