# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| TT PROPERTIES, a Washington Limited Liability Company, | No.  46803-4-II |
| Appellant, | |
| v. | |
| CITY OF TACOMA, a Municipal Corporation, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — TT Properties (TTP) appeals a summary judgment dismissal of its takings claim against the City of Tacoma involving two parcels of real property.  It argues that the superior court erred by granting summary judgment because there are genuine issues of material fact about whether the City's actions constituted a per se or otherwise compensable taking.  The City argues that even if there were a compensable taking, the City was not the liable actor.  We affirm in part and reverse in part, holding that a material issue of fact exists regarding one parcel of property.  We remand to the superior court for further proceedings consistent with this opinion.

No. 46803-4-II

FACTS

A.      *The Properties*

TTP is a Washington corporation owned and operated by the Turner family.  TTP owned two properties at issue in this case: 2620 Pacific Avenue (the Pacific Avenue property), and 223 East C Street (the C Street property).  Both properties have belonged to the Turner family and its business entities for several decades.[1]

Before 1952, the Pacific Avenue property covered what is now two lots on a triangular block surrounded by Pacific Avenue to the east, 27th Avenue to the south, and former Delin Street on a diagonal to the north and west.  In 1952, the Turner family sold roughly half of the property to the City of Tacoma and retained the southern part of the property (what is now 2620 Pacific Avenue, or the Pacific Avenue property).  The northern portion which the City bought, 2610 Pacific Avenue, abutted Delin Street to the north and west.  The Pacific Avenue property retained by the Turners lacked direct access to Delin Street because of the property's grade and a retaining wall.  But the Turners retained an express easement over the property they sold to the City, allowing the Turners to cross the City's property to reach Delin Street.  TTP's businesses used Delin Street to exit the property "on a regular basis."  Clerk's Papers (CP) at 189.

The C Street property abuts a city-owned alleyway that is 20 feet wide.  The Turners used the alleyway as an entrance to the C Street property.[2]  Specifically, trucks and long-haul vehicles

---

[1] TTP sold the Pacific Avenue property in 2013, after the alleged taking.

[2] The alleyway was not the only entrance to the C Street property; the property also appears to abut East 26th Street to the south.

2

used to use the alleyway to enter the property, but needed to "swing wide" over a city-owned railroad right-of-way beyond the alleyway to enter. CP at 191.

B.      *The Project*

In 2009, the Central Puget Sound Regional Transit Authority, doing business as Sound Transit, began a project known as the "D to M Street Track & Signal Project." CP at 29. The project was designed to add 1.4 miles of new tracks on a City right-of-way to help connect its Sounder commuter rail service from the Tacoma Dome station to a new station in Lakewood. The City passed a "Right-of-Use Agreement" (RUA) laying out its plans regarding the D to M Street project. CP at 197. In relevant part, the RUA contemplated that Sound Transit would need to use some city rights-of-way, including Delin Street. The City noted that "it is in the best interests of the public that the City authorize such use of the Public Rights-of-Way in support of Sounder Commuter Rail service." CP at 197. Other than granting Sound Transit the right to use various rights-of-way, the City's involvement in the D to M Street project consisted solely of approving and permitting Sound Transit's plans.

Sound Transit and its contractors carried out the necessary work for the D to M Street project. This included closing the portion of Delin Street that previously abutted 2620 and 2610 Pacific Avenue—in other words, the portion of Delin Street that the Pacific Avenue property accessed via its easement. Sound Transit converted this portion of the former Delin Street to a grassy slope. The Pacific Avenue property remains accessible from Pacific Avenue and 27th Street.

Pursuant to a city permit, Sound Transit also placed a "utility bungalow" on the city right-of-way abutting the alley near the C Street property. CP at 151. The bungalow encroached

3

about one foot into the alleyway, leaving 18.97 to 19.19 feet of the 20-foot-wide alleyway unobstructed. The remaining space in the alleyway here was more than the 16 foot minimum width required by the City for an alleyway. Nevertheless, the bungalow made it impossible for trucks to "swing wide" across the right-of-way to enter the alleyway and reach the C Street property.

C.      *Takings Claim*

TTP sued the City for unconstitutionally taking its property at 2620 Pacific Avenue and C Street. It alleged that the City accomplished these takings in conjunction with Sound Transit. TTP alleged that the removal of Delin Street damaged TTP because it was an abutting property owner. It also alleged that the utility bungalow's encroachment into the alleyway damaged its property. TTP declared that the C Street property's value was reduced because trucks could no longer "swing wide" to enter the alley.

The City moved for a summary judgment dismissal of all of TTP's claims. It argued that TTP could not obtain relief because (1) TTP had not demonstrated a takings claim, and therefore lacked standing, and, alternatively, (2) the City was not the actor that caused any taking.

In response, TTP asserted that the removal of Delin Street "has had a significant negative impact on the value" of the Pacific Avenue property and that the property was sold in 2013 "at a much reduced price." CP at 190. It also provided a declaration from a real estate appraiser, who said that his ongoing investigation of damages revealed that the "impact on value [at both properties] is significant." CP at 185.

TTP also argued that the City "participated with Sound Transit in permanently closing Delin Street," and "participated with Sound Transit in constructing a substantial encroachment

4

on the public [alleyway] abutting Plaintiff's C Street property." CP at 171. TTP alleged that these were more than merely regulatory actions because they were "proprietary actions respecting a government's management of its public lands." CP at 171. It alleged that the "extensive Right of Use Agreement with Sound Transit" made the City into a "direct participant by allowing its land to be used by Sound Transit." CP at 173.

The superior court orally granted the City's summary judgment motion on the grounds that TTP "still [has] access, and the City can go ahead and vacate a street if they want; but [TTP still has] access on two points" at the Pacific Avenue property. Verbatim Report of Proceedings at 18. In its written order, the superior court clarified that it granted the City's motion for summary judgment on the basis that "there is no compensable taking and therefore plaintiff has no standing against the City of Tacoma." CP at 274. TTP appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's summary judgment ruling de novo. *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one on which the litigation's outcome depends in whole or in part. *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider "all the facts submitted and the reasonable inferences therefrom in the light most favorable to the nonmoving party." *Atherton*, 115 Wn.2d at 516. Summary judgment should be granted only if the nonmoving party fails to show that a genuine issue as to a

material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986).

## II. TAKINGS CLAIM

TTP argues that material facts exist regarding whether the City, together with Sound Transit, took its property without just compensation at the Pacific Avenue and C Street sites. We agree with respect to the Pacific Avenue property, and we disagree with respect to the C Street property.

A.  *Takings Background*

"The federal and Washington state constitutions provide that private property may not be taken for public use without just compensation." *Sparks v. Douglas County*, 127 Wn.2d 901, 907, 904 P.2d 738 (1995). Where the government physically appropriates private property, a "per se" taking has occurred which requires compensation. *Sparks*, 127 Wn.2d at 907; *Guimont v. Clarke*, 121 Wn.2d 586, 603, 854 P.2d 1 (1993). Where the government appropriates property in fact, but with no formal exercise of the power of eminent domain, the law may recognize a taking through inverse condemnation. *Dickgieser v. State*, 153 Wn.2d 530, 534-535, 105 P.3d 26 (2005). To establish inverse condemnation, a plaintiff must show "(1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings." *Dickgieser*, 153 Wn.2d at 535.

The plaintiff in a takings case must show that a governmental activity directly or proximately caused the plaintiff's loss. *Jackass Mt. Ranch, Inc. v. S. Columbia Basin Irrigation Dist.*, 175 Wn. App. 374, 389, 305 P.3d 1108 (2013). "The government needs active proprietary participation, meaning 'participation without which the alleged taking or damaging would not

have occurred.'" *Jackass Mt. Ranch*, 175 Wn. App. at 389 (quoting *Halverson v. Skagit County*, 139 Wn.2d 1, 13, 983 P.2d 643 (1999)).

B.      *Takings Analysis*

      1. *Pacific Avenue Property: No Per Se Taking*

TTP argues that the City completely destroyed its access to Delin Street and thereby took its Pacific Avenue property per se.[3] We disagree. This question turns on whether, as a matter of law, a property owner has a per se compensable interest in accessing a *particular* street. We hold that so long as reasonable access remains to other public streets, the closure of one street a property abuts is not per se a taking. Instead, a property owner has a right to reasonable access to his property, which access must be substantially impaired for there to be a taking.

As stated above, to establish a taking, the claimant must prove a property right. *Granite Beach Holdings, LLC v. Dep't of Nat. Res.*, 103 Wn. App. 186, 205, 11 P.3d 847 (2000). "The right of access of an abutting property owner to a public right-of-way is a property right which if taken or damaged for a public use requires compensation under article I, section 16 of the Washington State Constitution." *Keiffer v. King County*, 89 Wn.2d 369, 372, 572 P.2d 408 (1977). Similarly, the owner of a private easement abutting a public highway has a property right subject to a takings analysis. *Williams Place, LLC v. State ex rel. Dep't of Transp.*, 187 Wn. App. 67, 87, 348 P.3d 797, *review denied*, 184 Wn.2d 1005 (2015).

If there is a property right, the first step in the analysis of whether compensation must be paid in a particular case is to determine whether the government action in question has actually

---

[3] TTP argues that a per se taking occurred only at the Pacific Avenue property, not at the C Street property.

interfered with the right of access to the property. *Keiffer*, 89 Wn.2d at 372. If the right of access has been impaired, the second step in the analysis is the degree of damage; this is a question of fact. *Keiffer*, 89 Wn.2d at 373-74.

To satisfy the first step, a party must show that his or her right of access to the property was either eliminated or substantially impaired. *Keiffer*, 89 Wn.2d at 373. That is, the party must show that his or her reasonable means of access to the property was obstructed. *Union Elevator & Warehouse Co. v. Dep't of Transp.*, 96 Wn. App. 288, 296, 980 P.2d 779 (1999).

> [A] landowner whose land becomes landlocked or whose access is substantially impaired as a result of a street vacation is said to sustain special injury. If, however, the landowner still retains an alternate mode of egress from or ingress to his land, even if less convenient, generally speaking he is not deemed specially damaged. He has no legal right to prevent the vacation because no legal right of his has been invaded.

*Hoskins v. City of Kirkland*, 7 Wn. App. 957, 960-61, 503 P.2d 1117 (1972) (citations omitted). Thus, a landowner is not entitled to compensation in the case of the vacation of a street where access is preserved over other streets or ways; an added inconvenience is not a damage or a taking. *Freeman v. City of Centralia*, 67 Wash. 142, 145, 120 P. 886 (1912); *see also* RCW 47.52.041 (preventing takings liability for the "closing of such streets, roads or highways as long as access still exists or is provided to such property abutting upon the closed streets, roads or highways. Circuity of travel shall not be a compensable item of damage."). Where there is no taking, the landowner has no standing to sue. *Hoskins*, 7 Wn. App. at 961.

Here, TTP abutted Delin Street due to its easement over the City's property.[4] *See Williams Place*, 187 Wn. App. at 87. But more than merely abutting a street is required to create takings liability when the street is closed. TTP argues that the closure of *any* street or street segment a property owner directly abuts is a per se taking. This is not the law. "[O]wners of property abutting on a street or alley have no vested right in such street or alley except to the extent that their access may not be unreasonably restricted or substantially affected." *Taft v. Wash. Mut. Sav. Bank*, 127 Wash. 503, 509-10, 221 P. 604 (1923). Without a denial of access to the property, even abutting owners do not have a property right in a *particular* street. *See Keiffer*, 89 Wn.2d at 372-73. The right of an abutting property owner is the right of access *to the property*, not access to the particular street. *See Keiffer*, 89 Wn.2d at 372 ("Not all impairments of access to property are compensable."); *Hoskins*, 7 Wn. App. at 960-61.

TTP cites *Town of Selah v. Waldbauer* for the proposition that removing access to a property from a particular street is categorically a per se taking. Br. of Appellant at 21 (citing 11 Wn. App. 749, 756, 525 P.2d 262 (1974)). But *Waldbauer* is not a takings case. In that case, a town petitioned to rezone an area such that the owner of a corner lot would no longer have access to one of the two streets it abutted. 11 Wn. App. at 750-51. Division Three of this court held that while eminent domain *may* have been an appropriate way to remove the corner lot owner's access to a particular road, rezoning was not a permissible way to accomplish that goal. 11 Wn.

---

[4] The City argues that TTP overburdened this easement by using it for parking rather than for access, and by using more of the 2610 Pacific Avenue property than the easement allowed. It argues that "loss of use" can be a consequence of such "misuse" and "trespass." Br. of Resp't at 12 (citing *Olympic Pipe Line Co. v. Thoeny*, 124 Wn. App. 381, 394, 101 P.3d 430 (2004)). But whether the City may have had a trespass claim against TTP says nothing about whether TTP had a valid easement.

App. at 756. Thus, *Waldbauer* does not address whether the closure of a particular street constitutes the taking of a property owner who abuts other streets.

Finally, TTP argues that it is inappropriate to consider an abutting owner's access to other roads when a particular abutting street has been removed. TTP points to *Washington Pattern Jury Instruction* 151.04, which instructs that there is no taking if a property owner must simply use a more circuitous route, but which instructs courts not to use the instruction "when the issue is access from or to an existing abutting roadway."[5] Br. of Appellant at 23 (citing 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 151.04, at 112 (2012) (WPI). TTP argues that this instruction demonstrates that considering the accessibility of other roads is inappropriate in the case of an abutting owner. But WPI 151.01, which addresses abutting property owners' rights to roadways, reads in relevant part:

> The right of access means that an owner is entitled to reasonable ingress and egress to the property. However, an owner is not necessarily entitled to access at all points along the boundary between the property and the existing public way.
> Unless such rights of access are substantially impaired, such owner has suffered no compensable damage in regard to these rights.

6A WPI 151.01, at 107. Thus, the pattern instructions contemplate a substantial impairment analysis even for abutting property access.

TTP does not establish a per se taking at the Pacific Avenue property merely by showing that its easement abutted Delin Street; it must show that the impairment of its access *to its property* was substantial. Accordingly, we turn to examining whether TTP raised a material

---

[5] We address TTP's argument, notwithstanding that pattern jury instructions are not binding legal authority.

issue of fact that its access to its Pacific Avenue property, as well as its C Street property, was substantially impaired.

2. *Substantial Impairment Analysis*

TTP argues that even if there was no per se taking, there was substantial impairment to its right of access to the Pacific Avenue property, and therefore a compensable taking through inverse condemnation. It also argues that its uses of the C Street property were substantially impaired. We hold that there is a genuine issue of material fact about whether access to the Pacific Avenue property, but not the C Street property, was substantially impaired.

Property owners abutting a public road do not have unlimited access rights. *Galvis v. Dep't of Transp.*, 140 Wn. App. 693, 703, 167 P.3d 584 (2007). Compensation is properly denied in those cases where the impairment of access is not substantial. *Keiffer*, 89 Wn.2d at 372. Moreover, summary judgment can be an appropriate avenue for disposing of takings claims based on a lack of substantial impairment. *See Hoskins*, 7 Wn. App. at 964-65.

i. *Pacific Avenue*

Here, it is undisputed that TTP retains ingress and egress access on Pacific Avenue and 27th Street. Nevertheless, there is a genuine issue of material fact regarding whether the removal of Delin Street substantially impaired TTP's access to its Pacific Avenue property. TTP provided declarations showing that the removal of Delin Street "has had a significant negative impact on the value" of the Pacific Avenue property, and that the property was sold in 2013 "at a much reduced price." CP at 190. TTP's businesses used Delin Street to exit the property "on a regular basis." CP at 189. These facts, taken in the light most favorable to TTP, suggest that the

removal of Delin Street substantially impaired TTP's access to the Pacific Avenue property. Accordingly, summary judgment dismissal of this claim is inappropriate.

ii. *C Street Property*

TTP argues that the utility bungalow built near the C Street property "substantially limited the potential uses" of that property, and that there was a question of fact for the jury about the degree of damage. Br. of Appellant at 25. We disagree.

TTP relies on *Fry v. O'Leary*, 141 Wash. 465, 252 P. 111 (1927), for the proposition that it had a property right in the pre-bungalow width of the alley. *Fry* involved a city ordinance vacating 13 feet of the width of the road that provided access to the plaintiffs' property. 141 Wash. at 466-67. In that case, our Supreme Court reasoned that an abutting property owner is entitled to recover in damages "for any *substantial or material* diminution" of the right of access, air, light, and other benefits from the width of the street. *Fry*, 141 Wash. at 470 (emphasis added).

TTP also cites *Young v. Nichols*, 152 Wash. 306, 278 P. 159 (1929). But *Young*, like *Fry*, holds that property owners have an action for damages if a government vacates "a *substantial* part of the street." *Young*, 152 Wash. at 308 (emphasis added). Here, the utility bungalow encroaches just over one foot into a 20-foot-wide alleyway, and TTP fails to show how *this encroachment* (rather than the placement of the bungalow beyond the alleyway in the City's right-of-way) substantially or materially diminished its right of access to the C Street property.

TTP fails to raise a genuine issue of material fact about the substantial impairment of its access to the C Street property. The facts show that the encroachment is minimal—just over a foot—and that the remaining width of the alley is more than the City's minimum required alley

width.  While TTP has a right to access its property, it does not show that it had a property right to "swing wide" over the City's property *beyond* the alley to enter the alley.  Therefore, TTP has failed to show that the encroachment of the bungalow into the alleyway substantially impaired its access to the property.

Thus, TTP's argument that a jury must determine the amount of damage is unavailing. "*Keiffer* does not require that a jury determine whether the degree of impairment is compensable." *Galvis*, 140 Wn. App. at 705.  In this case, TTP fails to raise a genuine issue of material fact to defeat summary judgment on the question whether there was a compensable taking.  A jury need not decide damages.  The superior court properly granted summary judgment on this issue.

C.    *Question of Fact about Taking by City*

The City argues that, even if there was a compensable taking, the City was not the liable actor.  We disagree because there is a question of material fact about whether the City participated in the taking by allowing Sound Transit to use its rights-of-way.

Both parties cite *Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998) to support their arguments about whether the City is liable.  In *Phillips*, landowners sued King County for a taking after a neighboring developer obtained the County's approval to construct drainage facilities.  136 Wn.2d at 950-51, 954.  The drainage facilities, which included a "sheet flow spreader" built on a King County right-of-way, caused water to flood the plaintiff landowners' property.  136 Wn.2d at 951-54.  Our Supreme Court granted review of a summary judgment in the County's favor.  136 Wn.2d at 954-55.

13

Our Supreme Court held that, as a matter of law, a government entity's mere approval of development is insufficient to create takings liability. 136 Wn.2d at 962 ("[C]ounty action in regulating development and enforcing drainage restrictions should not give rise to liability against the county for the negligence of a developer."). The court expressly "reject[ed] the contention that a municipality will be liable for a developer's design which causes damages to neighbors when the county's only actions are in approval and permitting." 136 Wn.2d at 963.

But our Supreme Court held that there was a question of fact about whether the County was liable for acting as a direct participant in allowing a third party to use the County's land. 136 Wn.2d at 969. The County had permitted the developer to install water-spreading devices on a right-of-way owned by the County. 136 Wn.2d at 967. The court allowed the plaintiffs to pursue the County on a theory that the water spreaders caused flooding. 136 Wn.2d at 969. "By making public property available for the building of the drainage facilities, the County may share in any potential liability, along with the developer, for damage to the Phillips' property caused by the dispersal of water from the spreaders." *Phillips*, 136 Wn.2d at 969.

Thus, *Phillips* holds that a governmental entity is liable only for acts attributable to it, which do not include permitting and approval activities or assuming ownership of a system the design of which is subject to a takings challenge. *Halverson*, 139 Wn.2d at 8-9 (citing *Phillips*, 136 Wn.2d at 965-66). But one act that may create government liability is allowing a third party to use public land. *Phillips*, 136 Wn.2d at 969. When this occurs, there is a question of fact about whether the government, "*as a property owner*, should be responsible for a 'proprietary action' respecting the County's management of its public land." *Halverson*, 139 Wn.2d at 9 (quoting *Phillips*, 136 Wn.2d at 967).

No. 46803-4-II

Here, although it is undisputed that Sound Transit and its contractors did all of the work that TTP challenges, there is at least a question of fact about whether the City acted as a direct participant in these actions by allowing Sound Transit to use its rights-of-way. *See Phillips*, 136 Wn.2d at 969. The RUA contemplates that Sound Transit would use City rights-of-way, including Delin Street, to accomplish the D to M project. The RUA granted Sound Transit the right to use these rights-of-way because this use would be in the best interests of the City and the public. Thus, there is a question of fact here about whether the City acted in a proprietary, rather than merely a regulatory, capacity.

In summary, we reverse the summary judgment dismissal of TTP's takings claim regarding the Pacific Avenue property because there is a genuine issue of material fact about whether TTP's access to that property was substantially impaired and whether the City acted in a proprietary or regulatory capacity. We affirm the summary judgment dismissal of TTP's takings claim at the C Street property because no taking occurred regarding that property. We remand to the superior court for further proceedings consistent with this opinion.

Worswick, J.

We concur:

Bjorgen, A.C.J.

Sutton, L.

15