# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

SCOTT BLOMENKAMP,     )    No. 75737-7-1-I

        Appellant,     )

        v.     )

CITY OF EDMONDS, a municipal )
corporation; KAUTZ ROUTE, LLC, )   UNPUBLISHED OPINION

        Respondents.     )    FILED: July 24, 2017

VERELLEN, C.J. — Exhausting administrative remedies is a fundamental tenet of the Land Use Petition Act, chapter 36.70C RCW (LUPA). A person who fails to exhaust the administrative remedy of an appeal allowed by city code to challenge the failure of the city to impose substantive land clearing tree protection standards in a permit may not use a LUPA appeal to collaterally attack the city's failure to impose such standards. Additionally, an untimely challenge of a land use decision in the guise of a failure to enforce claim is a prohibited collateral attack.

While clearing its property pursuant to a site and utility improvements permit, Kautz Route, LLC (Kautz) damaged roots extending onto its property from trees on Scott Blomenkamp's adjoining property. But no one exhausted the administrative remedy of appealing that permit. Alternatively, the Architectural Design Board (ADB) reviewed clearing proposals for the project. But no one appealed the ADB approval of the project.

Blomenkamp argues the City of Edmonds (City) failed to enforce tree protection provisions, but the critical question whether his off-site trees were in "areas immediately subject to construction" is a determination to be made as part of the permitting process. Waiting more than 14 months after ADB approval to allege the City failed to include tree protection standards for his off-site trees is a prohibited collateral attack. Blomenkamp may not raise the land clearing standards in his LUPA appeal.

Blomenkamp's other issues on appeal are not persuasive.

Therefore, we affirm.

## FACTS

Kautz has a five-duplex development project in Edmonds, Washington. On February 5, 2014, the ADB for the City reviewed and approved the project with conditions. No one appealed the ADB decision. On December 29, 2014, Kautz obtained a site and utility improvements permit that contemplated clearing. No one appealed that permit.

Kautz began developing the site in May 2015. Blomenkamp purchased property adjoining the approved project on May 12, 2015. "While grading the site in accordance with plans approved under [the site and utility improvement permit], roots extending into the development site from some trees located at [Blomenkamp's property] were damaged."[1] Blomenkamp contacted City staff about the damage. Arborists concluded several of Blomenkamp's trees were hazardous.

---

[1] Clerk's Papers (CP) at 297 (Finding of Fact 3).

2

The City notified Blomenkamp that the Development Services Director (Director) determined the project was "operating within the conditions of the approved permits" and allowed Kautz to continue work under the approved permits.[2]

On June 29, 2015, Blomenkamp and two other residents jointly filed a request for review of the ADB approval under Edmonds Community Development Code (ECDC) 20.100.040. Among other challenges, the request asserted that the project violated the ECDC 18.45.050(H) tree clearing provisions, resulting in four hazardous trees and a nuisance.[3] They asked that the Hearing Examiner (Examiner) revoke the permit approving the project.

The Director determined Blomenkamp failed to allege the *conditions of the permit* were not being met.[4] The Director concluded the scope of the Examiner's open hearing would focus on "whether the *requirements of the city code are being met* and whether the permitted activity is causing a nuisance or hazardous condition."[5]

The Examiner conducted an open record hearing. Blomenkamp filed a brief alleging private nuisance and seeking payment of $50,000.

The Examiner concluded he had no authority to consider claims not forwarded by the Director or to award damages for nuisance claims. As relief for the nuisance, the Examiner determined Kautz must pay for (i) removal of three trees and *replacement of them by ten foot tall trees of the same species*, (ii) monitoring of a fourth tree, and

---

[2] CP at 437.

[3] The request also asserted various violations of ADB design regulations and that City staff did not disclose material information to the ADB. CP at 391-94.

[4] See ECDC 20.100.040(A); CP at 398.

[5] See CP at 398 (emphasis added) (citing ECDC 20.100.040(A)).

replacement if necessary, and (iii) repair of a fifth tree. On reconsideration, the Examiner ordered Kautz to "pay for the replacement of [each removed tree] by *up to three trees* of the same species ten feet in height."[6] The Examiner concluded that under ECDC 20.100.040, he could not reconsider issues that were addressed in the ADB approval.

Blomenkamp appealed the Examiner's decision to Snohomish County Superior Court under LUPA. The superior court entered an order remanding to the Examiner

> with instructions to *address the caliper of the replacement trees*, pursuant to ECDC 18.45.075(A)(2), consistent with this decision. [Blomenkamp] did not establish any other errors by the Hearing Examiner related to issues raised in [his] Land Use Appeal. [He] is entitled to no further relief.[7]

The superior court granted the City's motion for reconsideration and revised the prior order

> [w]ith instructions to modify his decision to state that the three replacement trees shall be at least three inches in caliper and at least ten feet in height. *There shall be no briefing, hearing or other fact-finding proceedings on remand. If the Hearing Examiner corrects his decision in a manner that is consistent with this order, Petitioner shall not be entitled to file a new land use petition upon issuance of the Hearing Examiner's corrected decision.* Petitioner did not establish any other errors by the Hearing Examiner related to issues raised on Petitioner's Land Use Appeal. Petitioner is entitled to no further relief.[8]

The Examiner issued a "Decision Upon Judicial Remand" consistent with the superior court's order. Blomenkamp appeals.

---

[6] CP at 149 (emphasis added).

[7] CP at 13 (emphasis added).

[8] CP at 15 (emphasis added).

## ANALYSIS

LUPA governs judicial review of Washington land use decisions.[9] On review of a LUPA proceeding, we stand in the same position as the superior court.[10] We review "'administrative decisions on the record of the administrative tribunal, not of the superior court.'"[11] We review the record and questions of law de novo to determine whether the land use decision was supported by law and fact.[12]

Blomenkamp must establish that one of the following standards has been met:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

> (d) The land use decision is a clearly erroneous application of the law to the facts;

> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

> (f) The land use decision violates the constitutional rights of the party seeking relief.[13]

---

[9] HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs., 148 Wn.2d 451, 467, 61 P.3d 1141 (2003).

[10] Habitat Watch v. Skagit County, 155 Wn.2d 397, 405-06, 120 P.3d 56 (2005).

[11] HJS, 148 Wn.2d at 468 (quoting King County v. Washington State Boundary Review Bd. for King County, 122 Wn.2d 648, 672, 860 P.2d 1024 (1993)).

[12] Id.

[13] RCW 36.70C.130(1)(a)-(f).

## *I. Scope of Examiner Review*

Blomenkamp contends the Examiner erroneously concluded ECDC 20.100.040 precluded him from considering issues not forwarded by the Director. Relying on the distinction in ECDC 20.100.040 between giving notice of "the alleged deficiencies" and referring only "the deficiencies" to the hearing examiner, the City and Kautz counter that the Director is authorized to decide which issues are to be forwarded to the Examiner. They contend the Director acted within his discretion by limiting the issues to the nuisance and hazardous condition claims, and because Blomenkamp failed to appeal the ADB approval, he could not make a collateral attack disguised as a code enforcement claim.

Unfortunately, ECDC 20.100.040 is not a model of clarity. It does not define the authority of the Director and Examiner. But we need not resolve that question.

It is a general principle of land use law that the failure to exhaust administrative remedies or appeals precludes an appeal under LUPA.[14] Additionally, the failure to timely pursue a right to appeal a land use decision, such as a permit, precludes a subsequent collateral attack of that decision.[15]

---

[14] RCW 36.70C.060(2)(d) ("The petitioner has exhausted his or her administrative remedies to the extent required by law."); Durland v. San Juan County, 182 Wn.2d 55, 64-65, 340 P.3d 191 (2014) ("[W]here the permitting authority creates an administrative review process, a building permit does not become 'final' for purposes of LUPA until administrative review concludes."); Klineburger v. King County Dep't of Dev. and Envtl. Servs., 189 Wn. App. 153, 169, 356 P.3d 223 (2015) ("Because a 'land use decision' under LUPA must be a final determination by a local government, 'a LUPA petitioner must necessarily exhaust all available administrative remedies' before the superior court may exercise its appellate jurisdiction.") (quoting West v. Stahley, 155 Wn. App. 691, 699, 229 P.3d 943 (2010)).

[15] See Durland v. San Juan County, 174 Wn. App. 1, 13, 298 P.3d 757 (2012) ("[A] party may not collaterally challenge a land use decision for which the appeal period has passed via a challenge to a subsequent land use decision."); Habitat Watch v.

It is undisputed that the damage to the tree roots occurred when Kautz was grading in accordance with the permit issued December 29, 2014. A dispute arising out of a grading or clearing permit[16] is subject to an appeal to the hearing examiner. ECDC 18.45.060 recognizes that "[a]ny person aggrieved by the decision of the staff regarding a clearing permit may appeal such decision to the hearing examiner within 10 working days of the date of the decision." No one appealed the December 29, 2014 permit.[17]

If the December 29, 2014 permit contemplated clearing but failed to comply with the substantive clearing and tree removal standards of chapter 18.45 ECDC, including a resolution of whether off-site trees are in "areas immediately subject to construction" for purposes of ECDC 18.45.050(H), then such a decision by City staff was subject to an appeal to the Examiner under ECDC 18.45.060.

The Examiner concluded ECDC 18.45.035 required the ADB to consider any substantive clearing and tree removal standards. The ADB review addressed clearing.[18] But even ignoring the significance of the failure to appeal the December 29,

---

Skagit County, 155 Wn.2d 397, 410-11, 120 P.3d 56 (2005) (challenge to grading permit amounted to untimely collateral attack of earlier special use permit, where authorization for grading permit came from special use permit, whose appeal period had passed, and where sole basis for challenging grading permit was that extensions of special use permit were improper); Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 180-82, 4 P.3d 123 (2000) (challenge to county's approval of plat application based on challenge to density of plat was untimely collateral attack where petitioner had not challenged rezone decision establishing allowed density for project two years earlier).

[16] As clarified at oral argument, the terms are used interchangeably.

[17] The record before this court does not include the application for the permit, any survey made in support of the permit, or the actual permit. But none of the parties dispute that the site and utility improvement permit was issued and that the grading which damaged the tree roots was undertaken in accordance with that permit.

[18] ECDC 18.45.030 exempts projects approved through ADB review from the procedures but not from the substantive provisions of chapter 18.45 ECDC.

2014 permit, no one exhausted the remedy of appealing the ADB approval. Blomenkamp acknowledges that "[t]he ADB's decision was appealable to the city council . . . but no such appeal was ever taken."[19]

Blomenkamp suggests his challenge is not to the failure of the ADB to include the appropriate tree clearing provisions. Instead, he frames his challenge as the City's failure to enforce those tree protection provisions in the field when the grading damaged his trees: "The present case is not a case of attacking the permit through such a collateral way, it is a case of the actual act of grading and clearing not being compliant with the conditions of the permit."[20] In support of his argument, he cites the provision of the ADB approval that "[t]he plans must comply with the current conditions and regulations."[21]

But Blomenkamp's June 29, 2015 request for review of the ADB approval under ECDC 20.100.040(B)(3) asserts the project does not comply with the tree clearing standards of ECDC 18.45.050(H) for protection of trees in "areas immediately subject to construction." Those standards contemplate a permit based on a survey that sets out the drip line of trees to be retained: "Where the drip line of a tree overlaps a construction line, this shall be indicated on the survey and . . . tree protection measures shall be employed."[22]

The key premise of Blomenkamp's failure-to-enforce argument is that the City failed to impose the substantive standards of chapter 18.45 ECDC to protect trees with

---

[19] Appellant's Br. at 12-13.

[20] Id. at 28-29.

[21] Id. at 29 (quoting CP at 546).

[22] ECDC 18.45.050(H).

a drip circle in the "area immediate to construction." Because the code contemplates the City will make such a determination as part of the permitting process based on a survey provided in support of a clearing permit, his attack necessarily challenges the ADB approval itself. The ADB general provision that a property owner must comply with all regulations does not entitle Blomenkamp to a belated collateral attack on the City's alleged failure to impose and thus enforce the standards required to be considered in the permitting process.

Blomenkamp is correct that a LUPA appeal may extend to a final decision on the enforcement of ordinances.[23] But that does not allow a belated collateral attack on a permit in the guise of a failure-to-enforce claim.

Therefore, whether the clearing was permitted under the December 29, 2014 permit or the February 5, 2014 ADB approval, the failure to exhaust administrative remedies and the doctrine of finality preclude Blomenkamp from raising the substantive tree protection standards in his LUPA appeal.[24]

---

[23] Chumbley v. Snohomish County, 197 Wn. App. 346, 361-64, 386 P.3d 306 (2016) (county issued a building permit on one lot and months later decided a grading permit was not required for two other lots in landslide area where sewage system was installed; because the potential for enforcement of county ordinance did not become final until the county decided that a grading permit was not required, the 21-day time limit for a LUPA appeal for failure to enforce ordinances did not begin until the county made final decision that no grading permit was required for the two lots).

[24] To the extent Blomenkamp suggested at oral argument an equitable exception because he had not yet purchased his property when the permits were issued, he offers no authority, and we find none.

## II. Blomenkamp's Remedy

Blomenkamp contends the Examiner erred by failing to require that the combined width (caliper) of the replacement trees equal the width of the removed trees, but he cites no compelling authority for his proposition.

The Examiner referred to the ECDC 18.45.075(2) restoration standards:[25]

> For each tree removed, replacement planting of up to three trees of the same species in the immediate vicinity of the tree(s) which was removed so long as adequate growing space is provided for such species. The replacement trees shall be of sufficient caliper to adequately replace the lost tree(s). Replacement trees shall be a minimum of three inches in caliper and shall be replaced at the direction of the planning division director.

The context of chapter 18.45 ECDC does not support Blomenkamp's "combined equal caliper" theory. The code clearly grants broad discretion, including whether to require one, two, or three replacement trees for each removed tree, with the only specific reference to a minimum caliper of three inches for replacement trees.

Contrary to Blomenkamp's assertion, the Examiner did not conclude the term "adequately replace" was ambiguous and did not fail to follow the "ordinary principles of statutory construction."[26] The Examiner accurately observed that the city code does not include any identified formula for "adequate."[27] The Examiner noted that replacing removed trees with similar sized trees was not feasible:

---

[25] Kautz contends it is exempt from the ECDC restoration standards, but the ECDC exemption for ADB-approved projects applies only to the procedural and application requirements of the section, not the substantive requirements. See ECDC 18.45.035; see Respondent Kautz's Br. at 18.

[26] The Examiner did acknowledge that ECDC 20.100.040 was ambiguous. See CP at 145, 148.

[27] CP at 149.

[U]p to three replacement trees per lost trees is a recognition of the fact that it's not feasible or even probably possible to replace 100 foot trees with trees of a similar height. In past enforcement actions of Chapter 18.45 ECDC the City has never required replacement of this nature.[28]

The code does not support Blomenkamp's theory that the combined caliper of the replacement trees must equal the caliper of the removed tree. We conclude the Examiner's interpretation of law was not erroneous, his application of the code to the facts was not clearly erroneous, and the ultimate decision to impose a remedy consistent with the code was not an abuse of discretion.

### III. Superior Court Remand With Instructions

Blomenkamp challenges the authority of the superior court to impose conditions on remand to the Examiner. The superior court remanded with instructions to impose a caliper size of at least three inches without engaging in additional fact finding. A remand for such a modification without further proceedings is consistent with the court's statutory authority. RCW 36.70C.140 provides:

> The court may affirm or reverse the land use decision under review or *remand it for modification* or further proceedings. If the decision is remanded for modification or further proceedings, the court may make such an order as it finds necessary to preserve the interests of the parties and the public, pending further proceedings or action by the local jurisdiction.[29]

Blomenkamp argues that the superior court improperly retained jurisdiction, notably by directing that such a modified order would not be subject to another LUPA appeal. But when the superior court instructed the Examiner to make a specific modification, the court did not retain jurisdiction. There was no need for "briefing,

---

[28] Id.

[29] (Emphasis added.)

11

hearing or other fact-finding proceedings on remand."[30] And as long as the Examiner followed the court's instructions, an additional LUPA appeal would serve no purpose and would be contrary to the policy limiting such appeals.[31]

We conclude the superior court did not retain jurisdiction and did not err in remanding the matter to the Examiner with specific instructions.

### IV. Constitutional Claims

Blomenkamp contends there was a constitutional taking of his property. A taking requires some form of government action, typically a physical invasion onto private property,[32] or a regulation of private property under the government's police power authority in such a way as to destroy a fundamental attribute of ownership.[33] To pursue a taking for private use under article I, section 16 of the state constitution, there must be government action.[34] Our Supreme Court has recognized that "a government entity's mere approval of development is insufficient to create takings liability."[35]

Blomenkamp argues the City exercised its police powers to regulate his private property in such a way that destroyed a fundamental attribute of ownership.

---

[30] CP at 15.

[31] See Durland, 182 Wn.2d at 67 (recognizing "LUPA's stated purposes of promoting finality, predictability, and efficiency.").

[32] TT Props. v. City of Tacoma, 192 Wn. App. 238, 246, 366 P.3d 465, review denied, 185 Wn.2d 1036 (2016).

[33] Presbytery of Seattle v. King Cty., 114 Wn.2d 320, 330, 787 P.2d 907 (1990).

[34] State ex rel. Washington State Convention & Trade Ctr. v. Evans, 136 Wn.2d 811, 817, 966 P.2d 1252 (1998).

[35] TT Props., 192 Wn. App. at 253 (citing Phillips v. King County, 136 Wn.2d 946, 962, 968 P.2d 871 (1998) (municipality not liable for a developer's design which caused damage to neighbors' property when the county's only actions are in approval and permitting)).

Here, a private actor cut tree roots located on its own property. Blomenkamp claims the "degree of joint activity between the [City] and [Kautz] sufficiently establishes a nexus between" a private and government actor, but he fails to point to any compelling facts in the record to establish this alleged nexus.[36] Blomenkamp cites no authority extending takings liability to this setting.

Blomenkamp also argues his due process rights were violated. "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" appropriate to the case.[37] Blomenkamp was afforded ample notice and opportunity to be heard at meaningful times and in a meaningful manner before the Examiner and the superior court.

Blomenkamp's constitutional claims fail.

### V. Abandoned Argument On Appeal

Blomenkamp contends the superior court erred in declining to consider his argument that the Examiner failed to discuss the relationship between his decision and the City's comprehensive plan as required by RCW 35A.63.170(3).

But he failed to adequately raise this argument in his LUPA appeal. RCW 36.70C.070(7) requires a land use petition to include "[a] separate and concise statement of each error alleged to have been committed." Blomenkamp listed his procedural defect issue in his "Issues Presented" section of his opening brief to the superior court, but did not include any argument in the brief on the issue. Nor did he include the claim in his land use petition.

---

[36] Appellant's Br. at 51; Reply Br. at 20.

[37] Post v. City of Tacoma, 167 Wn.2d 300, 313, 217 P.3d 1179 (2009); Bellevue School Dist. v. E.S., 171 Wn.2d 695, 704-05, 257 P.3d 570 (2011).

13

We conclude Blomenkamp abandoned his RCW 35A.63.170 argument. He has not cited compelling authority that he can now raise this issue in this court.

Therefore, we affirm.

WE CONCUR: