IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHEN WANG and LIYIN XUE, a married couple, | No. 87029-7-I |
| Respondents, | DIVISION ONE |
| v. | |
| DONGMEI HUANG, a married woman as her separate property, | PUBLISHED OPINION |
| Appellant. | |

SMITH, J. — In 2023, Chen Wang and Liyin Xue (collectively referred to as Xue) bought a Bellevue property intending to demolish the existing home and rebuild. A recorded easement for sewer and water lines exists on the Xue property to benefit Dongmei Huang's property. In building the new home, Xue developed a proposed easement relocation plan, which Huang opposed. Xue sued Huang to relocate the easement under the Uniform Easement Relocation Act[1] (UERA). The trial court granted Xue's motion for summary judgment. Huang appeals, asserting that the UERA constitutes a taking for private use in violation of the Washington State Constitution and that genuine issues of material fact remain as to the UERA factors. Xue requests fees.

We affirm and decline to award fees.

---

[1] Chapter 64.65 RCW.

FACTS

In July 2023, Chen Wang and Liyin Xue purchased a property in Bellevue, Washington intending to demolish the existing home and build a new one. The property is burdened by a recorded perpetual easement for sewer and water lines that benefits Dongmei Huang's neighboring property. The easement follows the sewer and water lines in a zigzag pattern across the property, significantly limiting any buildable area. Xue had actual notice of the easement while purchasing the property.

In November 2023, Xue initiated a complaint against Huang to relocate the easement under the UERA. Huang opposed the relocation, articulating that living next door to an 18-month construction project would dramatically impact Huang's use and enjoyment of her home. Xue then moved for summary judgment.

In support of the motion for summary judgment, Xue submitted a declaration from Tim Gabelein, the engineer designing the easement relocation plan. Gabelein analyzed the seven UERA factors and testified that the easement relocation would not materially or negatively impact Huang.

Opposing summary judgment, Huang did not refute any of Gabelein's testimony or provide her own expert. Instead, Huang asserted that she had a right to "ransom value" in the easement. Huang contended that, in allowing for the removal of that right to ransom value, the UERA allowed a taking for private use in violation of article I, section16 of the Washington State Constitution.

2

Following argument on the issue, the trial court determined that that no authority supported Huang's assertion that owning an easement results in a "ransom value" that acts as a restrictive covenant. The trial court also concluded that the easement relocation would not materially impact Huang or her property. The trial court granted Xue's motion for summary judgment.

Huang appeals.

ANALYSIS

Private Taking

Huang asserts that the UERA allows for the unconstitutional taking of private property for private use. Xue disagrees, stating that Huang cannot establish the taking of a property right or any concrete harm. We conclude that the unilateral relocation of an easement under the UERA is not an unconstitutional taking of private property.

We review the constitutionality of a statute de novo. *Davis v. Arledge*, 27 Wn. App. 2d 55, 70, 531 P.3d 792 (2023). We presume the statute to be constitutional and "the party challenging [the] statute carries the burden of proving it is unconstitutional 'beyond a reasonable doubt.' " *Davis*, 27 Wn. App. 2d at 70 (quoting *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998)). Mere speculation is insufficient. *Tunstall v. Bergeson*, 141 Wn.2d 201, 223, 5 P.3d 691 (2000).

Article I, section16 of the Washington State Constitution prohibits the taking of private property for private use. To prove such a taking, a claimant must establish the effected right. *TT Props., LLC v. City of Tacoma*, 192 Wn.

3

App. 238, 247, 366 P.3d 465 (2016). A statute may implement, but cannot enlarge, an exception to the prohibition on the taking of private property for private use. *Sherman Mining Co. v. Smith*, 54 Wn.2d 607, 610, 343 P.2d 735 (1959).

An easement is nonpossessory property interest that "provides a right to enter, use, or enjoy real property owned by or in the possession of another." RCW 64.65.010(4)(a). The property subject to the easement is the servient estate. RCW 64.65.010(15). Under RCW 64.65.020, the owner of the servient estate may unilaterally

> relocate an easement . . . only if the relocation does not materially:
>
> (1) Lessen the utility of the easement;
>
> (2) After the relocation, increase the burden on the easement holder in its reasonable use and enjoyment of the easement;
>
> (3) Impair an affirmative, easement-related purpose for which the easement was created;
>
> (4) During or after the relocation, impair the safety of the easement holder or another entitled to use and enjoy the easement;
>
> (5) During the relocation, disrupt the use and enjoyment of the easement by the easement holder or another entitled to use and enjoy the easement, unless the servient estate owner substantially mitigates the duration and nature of the disruption;
>
> (6) Impair the physical condition, use, or value of the dominant estate or improvements on the dominant estate; or
>
> (7) Impair the value of the collateral of a security interest holder of record in the servient estate or dominant estate, impair a real property interest of a lessee of record in the dominant estate, or impair a recorded real property interest of any other person in the servient estate or dominant estate.

Huang claims that unilateral relocation under the UERA unconstitutionally deprives the easement owner of three rights: (1) the right to "hold out," or absolutely refuse to allow relocation; (2) the right to prevent others from interfering with their easement; and (3) the economic value of the easement. Xue maintains that the UERA does not "take" any of the asserted rights. Because the UERA does not deprive the easement owner of any right granted by the easement or deprive them of any value provided by the easement, we agree with Xue.[2]

### 1. Right of Refusal

Huang first asserts that, in allowing unilateral relocation, the UERA unconstitutionally takes the "right to ransom value"[3] that the ability to refuse relocation provides. Because no Washington case law or statutory authority establishes such a right, we disagree.

Again, a party must establish an effected right to prove an unconstitutional taking of private property. *TT Props.*, 192 Wn. App. at 247.

Huang relies on *MacMeekin v. Low Income Hous. Inst., Inc.*, 111 Wn. App. 188, 45 P.3d 570 (2002), to establish her asserted right to ransom value. But *MacMeekin* was published well before the imposition of the UERA and does not specifically create the right Huang argues it does.

---

[2] At oral argument, the question was raised as to whether the UERA constitutes a regulatory taking. Neither party briefed the issue and both agreed that the statute does not constitute a regulatory taking.

[3] Huang uses the "right to hold out" and "right to ransom value" interchangeably to refer to an alleged right to absolute refusal of relocation or adjustment.

*MacMeekin* addressed the, at the time unanswered, question of whether a court may relocate an established easement against the will of the easement owner. In answering that question, the court marched through the existing case law. *MacMeekin,* 111 Wn. App. at 200-206. Finding the precedent split, the court then turned to the approach adopted by the Restatement (Third) of Property (Servitudes) (2000). *MacMeekin,* 111 Wn. App. at 203-06.

Huang repeatedly quotes and refers to the Restatement in asserting that *MacMeekin* established the "right to hold out" against easement relocation: " '[t]he [neighborhood] holdout is not necessarily a rascal, and. . . the right to hold out is an important aspect of property ownership.' " *MacMeekin,* 111 Wn. App. at 205 (second alteration in original) (quoting Restatement (Third) of Property (Servitudes) § 7.10, Rationale, cmt. a.). But the *MacMeekin* court did not create or recognize that right. Rather, the court presented the Restatement's consideration of "right to hold out" as one of several perspectives on the broader question. *MacMeekin,* 111 Wn. App. at 205-06. And the court did not adopt the Restatement's approach, ultimately determining that easement relocation was inappropriate. The court instead relied on the common law standard to fill the gap in case law and statutory authority. *MacMeekin,* 111 Wn. App. at 207.

Over two decades later, RCW 64.65 now fills that gap. Huang provides no other legal authority in support of "the right to hold out" or "right to ransom value" and provides no argument as to why RCW 64.65 is not the legislature's way of clarifying the issue.

6

We conclude that there is no absolute right of refusal by the dominant estate to preclude relocation of an easement and therefore, the UERA does not result in an unconstitutional taking of any value associated with it.

2.  Undue Interference

Huang next asserts that the UERA allows undue interference with an easement, constituting a taking.  Because the UERA criteria serve to protect against eliminating or substantially impairing any easement right, we again disagree.

A claimant must establish an affected right to prove an unconstitutional taking.  *TT Props.*, 192 Wn. App. at 247.  Once the claimant establishes that right, the court must determine whether the opposing party has actually interfered with that right.  *TT Props.*, 192 Wn. App. at 247-48.  Actual interference must "either eliminate[] or substantially impair[]" an easement right or access.  *TT Props.*, 192 Wn. App. at 248.

In addition to granting a nonpossessory property interest, an easement imposes a duty not to interfere with the use, entry, or enjoyment permitted by that property interest.  RCW 64.65.010(4)(b).

Huang states that unilateral easement relocation completely removes an owner's right to prevent others from interfering with the easement.  And although Huang does hold the right to prevent interference, the UERA criteria exist to prevent unilateral relocation that would eliminate or substantially impair an easement right.

7

As detailed above, the servient estate owner must prove that relocation will not impair the safety of the easement holder; disrupt the use and enjoyment of the easement holder; or impair the physical condition, use, or value of the dominant estate. As a result, to be able to meet all seven criteria, the servient estate must necessarily prove the relocation will not eliminate or substantially impair the easement owner's rights. If the servient estate owner fails to do so, they may not unilaterally relocate the easement.

Huang suggests that the *TT Properties* "eliminates or substantially impairs" standard is inapplicable to the UERA because *TT Properties* addresses government action. But *Yim v. City of Seattle*, 194 Wn.2d 651, 673, 451 P.3d 675 (2019), provides that the private or public use distinction is "relevant only to the appropriate remedy where a taking has been shown." Because Huang fails to establish a taking, and the appropriate remedy is therefore unnecessary, the distinction is irrelevant.

We conclude that because the UERA does not allow interference with the use, entry, or enjoyment permitted by the property interest, it is not a taking.

3. <u>Economic Value</u>

Lastly, Huang contends that the UERA allows for the unconstitutional taking of the economic value of the easement. We conclude that Huang fails to establish that unilateral relocation impairs economic value to the extent of a "taking."

8

Huang again relies on *MacMeekin* to support her theory of "taking" and also refers to what appears to be a legislative memorandum addressing North Carolina's Uniform Easement Relocation Act.

To the former, Huang again cites to the trial court's description of then-current legal authority and theory. In fact, Huang cites specifically to the Third Restatement's approach to easement relocation. *MacMeekin*, 111 Wn. App. at 206. As with the Restatement discussed above, the court in *MacMeekin* did not affirm the referenced Restatement. The court's general dicta does not now establish that unilateral relocation necessarily transfers economic value.

And to the latter, a legislative memorandum from North Carolina is neither binding nor particularly relevant to the Washington statute. Additionally, Huang cites to a portion of the memo recounting the general theory of utility versus property rights. The referenced portion does not include any legal authority, nor does it reflect legislative intent.

Because Huang does not establish that the UERA allows for the unconstitutional taking of private property for private use beyond a reasonable doubt, the statute does not violate the Washington State constitution.

Remaining Factual Concerns

Huang then contends that questions of fact remain as to whether the proposed easement relocation violates the UERA. Xue first asserts that Huang failed to raise this issue below. Xue then argues that Huang failed to provide evidence of devaluation sufficient to survive summary judgment. We conclude

9

that while Huang did raise the issue below, no genuine issue of material fact remains as to the application of the UERA factors.

Generally, we do not consider an issue raised for the first time on appeal. RAP 2.5(a).

We review a grant or denial of summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party. *Watkins v. ESA Mgmt., LLC*, 30 Wn. App. 2d 916, 923, 547 P.3d 271 (2024). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Watkins*, 30 Wn. App.2d at 923. Pure speculation is insufficient to create a genuine issue of material fact. *Hungerford v. Dep't of Corr.*, 135 Wn. App. 240, 254, 139 P.3d 1131 (2006).

RCW 64.65.020 provides that a servient estate owner may unilaterally relocate an easement only upon meeting seven criteria. The sixth factor requires that the relocation not materially "impair the physical condition, use, or value of the dominant estate." RCW 64.65.020(6).

Huang challenges only the sixth factor on appeal.

Xue first states that Huang failed to raise the issue below because, although Huang expressed fear of disruption associated with the construction below, she failed to argue that the construction would devalue her property. But Huang did assert that this constitutes a disruption of the use and enjoyment of the dominant estate. Because the sixth UERA factor addresses impairment in

10

condition and use, in addition to impairment in value, Huang raised the issue below. We therefore address the merits.

Huang contends that Xue fails to establish all seven UERA criteria because the construction on Xue's property will devalue Huang's own property. Huang specifically notes the anticipated 18-month timeline for the entire construction project and the increased vehicular traffic, dust, and general commotion that will result. Xue maintains that Huang failed to provide evidence of devaluation and contends that Huang improperly conflates impairment that may result from any projected enabled by the relocation with impairment resulting from the relocation itself. We agree with Xue.

Gabelein, Xue's project engineer, provided a detailed assessment that determined most of the construction would take place with the existing water and sewer lines in place, meaning that any disruption in use would be minimal. Huang did not contest Gabelein's report, nor did she provide any evidence that the minimal disruption had any impact on the value of her property. As a result, no genuine issue of material fact remains as to the extent of the impairment in condition, use, and value of Huang's property the relocation could cause.

Without a genuine issue of material fact, summary judgment was appropriate.

<u>Fees</u>

Xue requests attorney fees on appeal. Because Xue is not the prevailing party, we decline to award fees.

11

RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. RCW 4.84.010 allows the court to award litigation costs, including attorney fees, to the prevailing party.

Because both parties provided valid arguments and Xue does not prevail on appeal, we decline to award fees.

We affirm.

_____

WE CONCUR:

_____ _____
Feldman, J.               Díaz, J.