# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHEN AND SANDRA KLINEBURGER, | No. 71325-6-I |
| Respondents, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| KING COUNTY DEPARTMENT OF DEVELOPMENT AND ENVIRONMENTAL SERVICES BUILDING AND FIRE SERVICES DIVISION CODE ENFORCEMENT SECTION, | FILED: August 3, 2015 |
| Appellant, | |
| DEPARTMENT OF ECOLOGY, | |
| Intervenor. | |

LEACH, J. — This appeal involves the scope of the superior court's appellate review under the Land Use Petition Act (LUPA), chapter 36.70C RCW. King County (County) and the Department of Ecology (Ecology) appeal the trial court's order in this LUPA action. Stephen and Sandra Klineburger appealed a code enforcement order. The county hearing examiner affirmed the order, concluding that the County did not have the authority to disturb Ecology's determination that the Klineburgers' property did not qualify for an exception to state regulations prohibiting construction in a designated floodway. The superior court affirmed the examiner's conclusion about the County's authority but

decided that it could review Ecology's determination. Reversing Ecology's decision, the court directed the County on remand to process the Klineburgers' application consistent with its decision. In a cross appeal, the Klineburgers contend that the trial court did not go far enough—that it should have ruled that the floodway regulations do not apply to their property. We affirm the examiner's decision. Because the superior court's review of Ecology's decision exceeded its statutory authority under LUPA and the Klineburgers failed to exhaust their administrative remedies, we reverse the trial court's decision reviewing Ecology's decision, and we deny the Klineburgers' cross appeal. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS

Stephen and Sandra Klineburger own property located about 800 feet south of the middle fork of the Snoqualmie River near North Bend, Washington. It lies within the federally mapped floodway: the area of the river floodplain where flood depths and velocities may reach hazardous levels. The site also lies in the river's county-designated channel migration zone, the area where the river's channel can be reasonably predicted to migrate over time, creating an erosion hazard. The county regulations divide a channel migration zone into moderate hazard areas and severe hazard areas. A road, 428th Avenue SE, passes between the Klineburgers' property and the river. The County has

designated properties between the road and the river severe hazard areas and designated the Klineburgers' property a moderate hazard area.

The record does not provide a clear history of the residential development on the Klineburgers' property. Sometime between 2005 and 2007, a fire destroyed a home on the property. The Klineburgers purchased the property in 2011. They contend that the mobile home at issue was on the property then.

In October 2011, the King County Department of Permitting and Environmental Review (DPER)[1] investigated a complaint about the mobile home, accumulated debris, and inoperable vehicles on the Klineburgers' property. On October 24, 2011, the code enforcement officer posted a stop work order on the mobile home, directing the Klineburgers to obtain the necessary permits and inspections.

On January 3, 2012, the Klineburgers attended a "pre-application meeting" with DPER about the required permits. DPER informed them that they could not build in the floodway unless they could establish that their site qualified as an exception to the floodplain management regulations. An exception allows the repair or replacement, under certain circumstances, of a "substantially damaged" dwelling.[2]

---

[1] DPER was formerly known as DDES (the Department of Development and Environmental Services).

[2] WAC 173-158-076.

On January 9, 2012, DPER issued the Klineburgers a notice of code violation and order of abatement. The notice told them of their right to appeal and the procedures to do so. The Klineburgers timely appealed. They also applied for a variance for nonconforming use under the King County Code (KCC), which the County denied.[3] The County told them that they had to submit a new building permit application, "including review of the floodplain/floodway, critical areas designation and Health Dept. approval."

The Klineburgers hired a civil engineer, William Taylor, to review the floodway issues affecting their property. Taylor's July 27, 2012, report evaluated the site according to the criteria of KCC 21A.24.260.G. This regulation requires that the base flood depth not exceed three feet, that the base flood velocity not exceed three feet per second, that there be no evidence of flood-related erosion, and that a flood warning system or emergency plan be in place. Taylor submitted a report to Ecology.

The report stated that the base flood depth at the building location was "slightly less than 3 feet with the exception of the southeast corner of the building" and that Taylor proposed to "adjust the grade slightly in that area to achieve compliance with the Base Flood Depth requirements of the code." Taylor found that the base flood velocity was 2.2 feet per second—within code

---

[3] The Klineburgers applied for a variance for nonconforming use within the shoreline jurisdiction under KCC 21A.32.045.

requirements. He found no evidence of flood-related erosion. He noted that the "entire site" is located in the moderate channel migration hazard area of a federally mapped floodway. But his inspection of the property disclosed "no signs of historic erosion," and "reports from long-term residents verify this." Taylor's report did not address the warning system requirement.

On October 22, 2012, Ecology floodplain specialist David Radabaugh sent a letter to Steve Bleifuhs, manager of the County's River and Floodplain Management Section. Radabaugh explained to Bleifuhs why, after reviewing Taylor's report, Ecology had determined that the Klineburger site did not meet most of the required criteria for rebuilding in a floodway. Radabaugh concluded, "Ecology does not recommend the approval of the Klineburger residence placement at 9609 - 428th Avenue SE." Radabaugh invited Bleifuhs to contact him or the engineer who reviewed the report with any questions about Ecology's "decision." Radabaugh sent a copy of this letter to Stephen Klineburger.

A week later, Taylor sent Bleifuhs a response to Radabaugh's letter. Taylor disputed Ecology's conclusions about flood depth and erosion and attached "reference pages from King County's website regarding flood alert programs."

On December 18, 2012, Radabaugh responded to Taylor's letter in a second letter to Bleifuhs, in which he rejected most of Taylor's explanations and

arguments. Radabaugh reminded Bleifuhs that before the County may issue a permit for a replacement residence in the floodway, Ecology must expressly recommend approval, repeating that Ecology "[did] not recommend" approval of the Klineburgers' replacement construction. In January 2013, Bleifuhs communicated Ecology's conclusion to DPER's permitting department, advising that the Klineburgers' site "should not be approved for reconstruction or replacement of a residential structure."

On March 20, 2013, the King County hearing examiner heard the Klineburgers' code enforcement appeal. In the decision denying the appeal, the hearing examiner stated that he "ha[d] no independent authority to review, modify or vacate the findings of the Department of Ecology with respect to floodway issues." The examiner noted that in the area of floodway management,

> [a]ll the essential regulatory determinations are made by the State Department of Ecology. The role of the County is limited to concurring with an affirmative recommendation from Ecology. . . . [I]f the Department of Ecology has concluded that the proposed floodway development should be denied, the County lacks any authority to overturn such determination. . . . Once Ecology had denied the Klineburger request for a floodway exemption, that determination was conclusive and binding on the County.

The Klineburgers appealed to superior court under LUPA, asserting, "King County is the final authority on the permit and should not abdicate to the Washington State Department of Ecology." They asked the court to order King County to issue a permit to place a home on the property on the basis that either

the lot is not in a floodway and "none of these regulations matter" or that the Klineburgers have met the criteria for an exception allowing development in the floodway.

The trial court agreed that "the County's decision was constrained by the law applicable to such decisions" but decided that the superior court "has jurisdiction under the Constitution to review the decision of the Washington State Department of Ecology adopted by King County as their own to determine if the Department of Ecology/King County correctly interpreted the law and applied [it] to the facts in the case." The court stated that it "is left with a definite and firm conviction a mistake has been made." The court adopted most of the findings of fact in the Klineburgers' proposed order, as well as some findings from the hearing examiner's decision, concluding, "The Court gives weight to the King County Hearing Examiner's [findings and conclusions] that Klineburger proved that 428 Ave SE had a localized diking effect."

The court struck language in the Klineburgers' proposed order directing the County to process the Klineburgers' permits "as if the lot was not in the floodway, [and] therefore the floodway regulations do not apply." However, the court adopted the Klineburgers' alternative language reversing and remanding to King County: "[T]he County is ordered to allow the Petitioner to apply for whatever permits are needed to legalize his modular home and the permit is to

-7-

be processed with the requirement the four criteria in WAC 173-158-7076(1)(a)(b) [sic] and KCC 21A.24.26(G)(1)(a)(b) [sic] have been met." The court added, "The Court does not make any decisions with regard to the remainder of the permit process at this time. That decision is up to the County in the first instance."

The County appeals. Intervenor Ecology also appeals. The Klineburgers cross appeal, contending that they successfully demonstrated that the floodway regulations do not apply because their property is not in the floodway.

## STANDARD OF REVIEW

LUPA governs judicial review of land use decisions.[4] When reviewing an administrative land use decision under LUPA, an appellate court stands in the shoes of the superior court and reviews the administrative record.[5] A party seeking the reversal of a land use decision has the burden to establish one of six statutory standards under LUPA.[6] This case implicates the following grounds for relief:

---

[4] Lauer v. Pierce County, 173 Wn.2d 242, 252, 267 P.3d 988 (2011).

[5] RCW 36.70C.130; King County Dep't of Dev. & Envtl. Servs. v. King County, 177 Wn.2d 636, 643, 305 P.3d 240 (2013) (King County DDES).

[6] RCW 36.70C.130(1). These grounds are

(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

. . . .

(d) The land use decision is a clearly erroneous application of the law to the facts.[7]

This court reviews alleged errors of law de novo.[8] "[A] decision is clearly erroneous if, 'although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed.'"[9]

## ANALYSIS

### Ecology, King County, and Floodway Management

Our state legislature has declared the alleviation of recurring flood damages to public and private property a matter of public concern and assumed "full regulatory control" over waters flowing or lying within the state, subject only

---

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

(f) The land use decision violates the constitutional rights of the party seeking relief.

[7] RCW 36.70C.130(1).

[8] King County DDES, 177 Wn.2d at 643.

[9] Lauer, 173 Wn.2d at 253 (quoting Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 829, 256 P.3d 1150 (2011)).

to federal control, to the extent necessary to manage floodplains.[10] Ecology has the authority

> to examine, approve or reject designs and plans for any structure or works, public or private, to be erected or built or to be reconstructed or modified upon the banks or in or over the channel or over and across the floodway of any stream or body of water in this state.[11]

Ecology reviews and approves local floodplain management ordinances[12] and provides technical and enforcement assistance to local governments when requested.[13] Ecology also helps local governments identify the location of the 100-year floodplain, based on the areas that the federal emergency management agency designates as special flood hazard areas.[14] And Ecology establishes the minimum state requirements for floodplain management that meet or exceed federal requirements.[15]

Washington law generally prohibits construction or reconstruction of residential structures within designated floodways.[16] One exception may allow the repair or replacement of "substantially damaged residential structures."[17] After assessing the risk of harm, Ecology may recommend replacement or repair

---

[10] RCW 86.16.010.
[11] RCW 86.16.025.
[12] RCW 86.16.031(1).
[13] RCW 86.16.031(2), (3), (5).
[14] RCW 86.16.031(7), .051.
[15] RCW 86.16.031(6), (8).
[16] RCW 86.16.041(2)(a).
[17] RCW 86.16.041(4); WAC 173-158-076(1).

of a dwelling if the site meets certain criteria.[18] At the request of a local government, Ecology will prepare a report of findings and recommendations for local government concurrence.[19] But without Ecology's permission, the local government may not allow repair or replacement of a damaged residential structure located within the floodway.[20]

RCW 86.16.110 allows any person "feeling aggrieved at any order, decision, or determination of the department or director [of Ecology] pursuant to this chapter [RCW 86.16], affecting his or her interest," to seek review under RCW 43.21B.310. Chapter 43.21B RCW establishes the Pollution Control Hearings Board (PCHB or Board) and grants it authority to hear and decide appeals from Ecology decisions, including those involving floodplain management.[21] RCW 43.21B describes procedures for filing an appeal to the PCHB[22] and provides for judicial review of a final PCHB decision under the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW.[23]

LUPA provides "the exclusive means of judicial review of land use decisions," which the statute defines as "a final determination by a local

---

[18] RCW 86.16.041(4); WAC 173-158-076(1); KCC 21A.24.260.G.1.a-d.
[19] WAC 173-158-076(1).
[20] WAC 173-158-076(1); KCC 21A.24.260.G.2.
[21] RCW 43.21B.110(1)(b) (PCHB has jurisdiction over appeals of orders issued under RCW 86.16.020)).
[22] RCW 43.21B.230.
[23] RCW 43.21B.180.

jurisdiction's body or officer with the highest level of authority to make the determination."[24] Under the KCC, the hearing examiner makes the final decision on behalf of the County, a "local jurisdiction" under LUPA,[25] about code enforcement appeals.[26] An aggrieved party may appeal the examiner's determination to superior court, which reviews the decision under LUPA.[27]

The examiner's order denying the Klineburgers' code enforcement appeal described the County's limited authority in the floodway management scheme:

> The nub of the matter is that Mr. Klineburger needs a building permit for placement of a mobile home on his property. While he appears to be more than willing to get one, the County won't issue a permit because the State has determined that such siting would not meet its requirements for development within the floodway. Attempting to rectify such an outcome is well outside the jurisdictional boundaries of this code enforcement appeal. . . . The appeal must be denied.

In their land use petition, the Klineburgers asserted that "King County abdicated its responsibility" to exercise its "independent authority to review, modify, and vacate the findings of Department of Ecology with respect to floodway issues." The superior court affirmed the examiner's decision to the extent of noting that it "was constrained by the law applicable to such decisions."

---

[24] RCW 36.70C.030(1), .020(2).

[25] RCW 36.70C.020(3). The statute's definition "does not include state agencies, such as Ecology." Samuel's Furniture, Inc. v. Dep't of Ecology, 147 Wn.2d 440, 453 n.12, 54 P.3d 1194 (2002).

[26] KCC 20.24.080.A.2; KCC 20.20.020.E (determinations under KCC 21A.24 are Type 2 land use decisions).

[27] RCW 36.70C.130(1).

We agree with the County and the superior court. The unambiguous language of the state regulation governing the replacement of dwellings located in a designated floodway states, "Without a recommendation from the department for the repair or replacement of a substantially damaged residential structure located in the regulatory floodway, no repair or replacement is allowed."[28] Under LUPA, the examiner's order denying the appeal was the only "land use decision" under review.[29] The superior court had to decide if the examiner erred using the standards in RCW 36.70C.130(1). Here, the court correctly concluded that the examiner did not err, given that it was "constrained by the law applicable to such decisions" and could not independently modify or vacate Ecology's determination.

The Superior Court's Authority under LUPA

The County argues next that because the Klineburgers could not appeal Ecology's decision under LUPA, the trial court violated the doctrines of primary jurisdiction and exhaustion by reviewing and reversing Ecology's decision. The Klineburgers counter that because the County alleges procedural, not jurisdictional, errors, RAP 2.5 bars the County from raising these issues for the first time on appeal.

---

[28] WAC 173-158-076(1).
[29] RCW 36.70C.020(2).

We reject the Klineburgers' RAP 2.5 argument. First, under RAP 2.5, we "may refuse" to review an issue not raised below but are not required to do so. Second, the parties disputed the scope of the County's authority before the trial court. Therefore, the County may properly raise this issue on appeal. Contrary to the Klineburgers' position, this issue implicates the trial court's jurisdiction, which we may raise on our own under RAP 2.5(a)(1). Third, the Klineburgers did not request or brief the relief granted by the trial court. This circumstance makes declining review of this issue inappropriate and unfair.

We conclude that the trial court erred when it reviewed and reversed Ecology's decision. First, Ecology's recommendation was a determination by a state agency, not a local jurisdiction. Therefore, it was not a "land use decision" reviewable under LUPA.[30]

Second, although Ecology was a necessary party, the Klineburgers did not join the agency to their LUPA action. A party is necessary if that party's absence "'would prevent the trial court from affording complete relief to existing parties to the action or if the party's absence would either impair that party's interest or subject any existing party to inconsistent or multiple liability.'"[31] Here, the trial

---

[30] RCW 36.70C.020(3) ("local jurisdiction" means a county, city, or incorporated town).

[31] Woodfield Neigh. Homeowner's Ass'n v. Graziano, 154 Wn. App. 1, 4, 225 P.3d 246 (2009) (quoting Coastal Bldg. Corp. v. City of Seattle, 65 Wn. App. 1, 5, 828 P.2d 7 (1992)); CR 19(a).

court could not review the merits of Ecology's determination without affecting Ecology's rights as the state agency tasked with floodplain management. Therefore, Ecology was a necessary party, and the trial court could not justly decide a dispute to which the agency had not been joined.[32]

Third, by reviewing the merits of Ecology's decision, the trial court allowed the Klineburgers to avoid the administrative exhaustion requirements the legislature established. Because a "land use decision" under LUPA must be a final determination by a local government, "a LUPA petitioner must necessarily exhaust all available administrative remedies" before the superior court may exercise its appellate jurisdiction.[33] Exhaustion furthers the purposes of

"(1) discouraging the frequent and deliberate flouting of administrative processes; (2) protecting agency autonomy by allowing an agency the first opportunity to apply its expertise, exercise its discretion, and correct its errors; (3) aiding judicial review by promoting the development of facts during the administrative proceeding; and (4) promoting judicial economy by reducing duplication, and perhaps even obviating judicial involvement."[34]

---

[32] See Woodfield, 154 Wn. App. at 4-5 (county was necessary party where court's ruling affected county restrictions on development).

[33] West v. Stahley, 155 Wn. App. 691, 697, 229 P.3d 943 (2010); RCW 36.70C.060(2)(d); Durland v. San Juan County, 182 Wn.2d. 55, 66 n.6, 340 P.3d 191 (2014).

[34] IGI Res., Inc. v. City of Pasco, 180 Wn. App. 638, 642, 325 P.3d 275 (2014) (internal quotation marks omitted) (quoting King County v. Wash. State Boundary Review Bd., 122 Wn.2d 648, 669, 860 P.2d 1024 (1993)).

"Exhausting administrative remedies is <u>always</u> a condition precedent to challenging a 'land use decision' that is subject to review under LUPA."[35]

Here, the Klineburgers exhausted their administrative remedies for the hearing examiner's decision and properly appealed that determination under LUPA. But they did not exhaust administrative remedies for Ecology's decision because they never appealed that determination to the PCHB. Had they done so, they could have sought judicial review of an unfavorable PCHB decision—but under WAPA, not LUPA.

The Klineburgers argue that Ecology's October 22, 2012, letter was merely an "advisory recommendation," not an appealable order, and therefore they could not have sought relief from the PCHB. They cite RCW 43.21B.310(4), which states that an appealable decision "shall be identified as such and shall contain a conspicuous notice to the recipient" of the procedures for filing a PCHB appeal. They assert that "Ecology's letter is completely devoid of any identification of an appealable decision, nor does it contain a conspicuous notice to the Klineburgers on how it may be appealed."

To determine appealability of Ecology decisions, the PCHB has weighed, among other factors, an absence of such appeal language in an Ecology

---

[35] <u>West</u>, 155 Wn. App. at 697.

communication.[36] But in a recent order,[37] the Board clarified that the fact that an e-mailed denial of an applicant's request did not contain RCW 43.21B.310(4)'s appeal language "is not dispositive of whether the agency action at issue is appealable to the Board. . . . [T]he failure to include this language does not divest the Board of its jurisdiction or impact whether the decision may be appealed."

Moreover, in PCHB cases where the Board has found that an Ecology determination was not appealable, the underlying facts are distinguishable from Ecology's letter here. For example, in Steensma v. Department of Ecology,[38] the Board noted that beyond an absence of appeal language, the letter at issue "[did] not constitute an Ecology decision on a water right application" but merely "offer[ed] Ecology's views on the applicant's proposal." The Board observed that Ecology did not send the letter directly to the applicant.[39] And the Board concluded that because of specific statutory limitations on Ecology's authority, "Ecology cannot render any binding decision" related to the disputed permits; in sum, "Ecology ha[d] not made a permitting decision" appealable to the PCHB.[40]

---

[36] Steensma v. Dep't of Ecology, No. 11-053 (Wash. Pollution Control Hr'gs Bd. Sept. 8, 2011); Sylvia Ridge Developers, LLC v. Dep't of Ecology, No. 07-139 (Wash. Pollution Control Hr'gs Bd. Mar. 14, 2008).

[37] Hagman v. Dep't of Ecology, No. 14-016c, at 14 n.4 (Wash. Pollution Control Hr'gs Bd. Dec. 3, 2014).

[38] No. 11-053, at 6-7 (Wash. Pollution Control Hr'gs Bd. Sept. 8, 2011).

[39] Steensma, No. 11-053, at 7.

[40] Steensma, No. 11-053, at 8. The Board did describe other avenues by which the appellants could seek relief.

Similarly, in <u>Sylvia Ridge Developers, LLC v. Department of Ecology</u>,[41] the Board concluded that a "non-compliance notification" an Ecology water quality inspector sent to the permit applicants was not an appealable order. The Board observed that the water pollution control act[42] expressly provides that such a notification does not constitute "'an order or directive under RCW 43.21B.310,'" and the inspector did not have the authority under the statute to issue an order.[43]

Here, by contrast, Radabaugh had the authority to make Ecology's determination, which the County had to follow. No statutory provision limited Ecology's authority to make the decision or specified that it was not appealable under RCW 43.21B.310. Radabaugh referred to Ecology's determination as the agency's "decision." He sent the letter to Stephen Klineburger, who does not dispute he received it. Contrary to the Klineburgers' assertion that they "were left only one course: to challenge Ecology's letter through the Hearing Examiner," RCW 86.16.110 provided their route to relief from Ecology's "order, decision, or determination," an appeal to the PCHB.

Under both LUPA and WAPA, the superior court has jurisdiction to review administrative decisions. But we distinguish the court's subject matter jurisdiction from its statutory authority to exercise that jurisdiction by ruling in a particular

---

[41] No. 07-139, at 5-6 (Wash. Pollution Control Hr'gs Bd. Mar. 14, 2008).
[42] Chapter 90.48 RCW.
[43] <u>Sylvia Ridge Developers</u>, No. 07-139, at 5 (quoting RCW 90.48.120(1)).

matter.[44] Here, the court had the authority under WAPA to review an Ecology determination following a PCHB decision, with a more complete factual record to do so. But by reaching the merits of Ecology's decision before the Klineburgers had exhausted their administrative remedies, the court exercised its jurisdiction prematurely and exceeded its authority under LUPA.

Our Supreme Court has recognized limited exceptions to the exhaustion requirement where, for example, appeal would be futile.[45] However, courts apply the futility exception narrowly, and "[i]n no circumstance would the exception permit appeal under some other distinct, inapplicable statutory review scheme."[46] In Stafne v. Snohomish County,[47] a landowner challenged a city's decision about a comprehensive plan amendment by filing a petition under LUPA. Our Supreme Court held that because a comprehensive plan amendment is not a "land use decision," Stafne could not seek relief directly from superior court through a LUPA petition.[48] Rather, under the Growth Management Act (GMA), chapter 36.70A RCW, he had to appeal first to the growth management hearings board.[49]

---

[44] See Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 539-41, 886 P.2d 189 (1994).
[45] Stafne v. Snohomish County, 174 Wn.2d 24, 34, 271 P.3d 868 (2012).
[46] Stafne, 174 Wn.2d at 35; see also Coffey v. City of Walla Walla, 145 Wn. App. 435, 442, 187 P.3d 272 (2008) (superior court could not consider comprehensive plan amendment under land use petition).
[47] 174 Wn.2d 24, 28-29, 271 P.3d 868 (2012).
[48] Stafne, 174 Wn.2d at 33-34.
[49] Stafne, 174 Wn.2d at 34.

Even the circumstance of unlikely success before that board did not give him the right to challenge the city's decision directly via LUPA: "In other words, even if the chances for successful review before the growth board are slim, that cannot change a non-land-use decision into a land use decision under LUPA."[50]

Like Stafne, this case involves two "separate and distinct statutory schemes, with each containing expressly different review procedures."[51] To challenge Ecology's decision relating to floodway management, the Klineburgers first had to seek relief from the PCHB. The superior court interpreted Ecology's decision as "adopted by King County as their own" and reasoned that it could "determine if the Department of Ecology/King County correctly interpreted the law." But this interpretation "cannot change a non-land-use decision into a land use decision under LUPA."[52] The trial court erred when it reviewed and reversed Ecology's decision.

Cross Appeal:  Merits of Ecology's Determination

In a cross appeal, the Klineburgers allege that the trial court erred by declining to order the County to process the Klineburgers' permits on their proposed alternative basis:  "as if the lot was not in the floodway, therefore the floodway regulations do not apply." But because the superior court did not have

---

[50] Stafne, 174 Wn.2d at 34.
[51] Stafne, 174 Wn.2d at 31.
[52] Stafne, 174 Wn.2d at 34.

authority under LUPA to review Ecology's determination on any basis, it did not err by declining to rule as the Klineburgers proposed. For the same reason, we decline to address the merits of Ecology's decision, and we deny the Klineburgers' cross appeal.

## CONCLUSION

We affirm the order of the King County hearing examiner. We reverse the portion of the superior court's order setting aside Ecology's determination and holding that the Klineburgers' property meets the criteria for rebuilding in the floodway. We deny the Klineburgers' cross appeal and remand for further proceedings consistent with this opinion.

*Leach, J*

WE CONCUR:

*Trickey, J*

*Appelwick, J*