IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STEPHEN AND SANDRA KLINEBURGER, | ) ) ) | No. 76458-6-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) ) | |
| Respondent. | ) ) | FILED: August 13, 2018 |

LEACH, J. — Stephen and Sandra Klineburger appeal the superior court's decision affirming a Pollution Control Hearings Board (PCHB) decision in favor of the Department of Ecology. They challenge the constitutionality of WAC 173-158-076(1)(b), claiming this regulation effects a taking, violates their substantive due process rights, and violates equal protection. Because the Klineburgers' takings and substantive due process claims are not ripe and a rational basis for the regulation exists, we affirm.

## FACTS

The Klineburgers own property located about 800 feet south of the middle fork of the Snoqualmie River. The Klineburgers purchased their property in 2011. A fire destroyed a prior residential structure on the property sometime

between 2005 and 2007. In October 2011, the King County Department of Permitting and Environmental Review (DPER) investigated a complaint about a mobile home, accumulated debris, and inoperable vehicles on the property.

DPER posted a stop work order on the mobile home. It directed the Klineburgers to obtain necessary permits and inspections. The Klineburgers tried to obtain the required permits for the mobile home.

The Klineburgers' property lies in an area that the Federal Emergency Management Agency (FEMA) has designated a floodway, an area where, in a flood, the water depths and velocities are greatest.[1] The site also lies in the county-designated channel migration zone, "the area along a river channel within which the channel can be reasonably predicted . . . to migrate over time," creating an erosion hazard.[2]

State flood management laws restrict residential construction, repair, and replacement in floodways.[3] Landowners may repair, reconstruct, or improve a residential structure only if the property meets certain criteria.[4] For substantially damaged residential structures in the floodway, Ecology can "assess the risk of harm to life and property posed by the specific conditions of the floodway, and, based upon scientific analysis of depth, velocity, and flood-related erosion"

___

[1] 44 C.F.R. § 9.4.
[2] KING COUNTY CODE 21A.06.182.
[3] RCW 86.16.041(2)(a).
[4] RCW 86.16.041(2)(a).

-2-

recommend allowing repair.[5] Ecology's recommendation, with the town, city, or county's concurrence, has the effect of waiving the floodway restriction.[6]

Floodplain management statutes also direct Ecology to develop guiding procedures and criteria to evaluate the risks associated with building in the floodway.[7] Following this instruction, Ecology adopted WAC 173-158-076(1). This regulation establishes four conditions allowing replacement of substantially damaged property:

1. "Flood warning times must be twelve hours or greater, except if the local government demonstrates that it has a flood warning system and/or emergency plan in operation."

2. "Flood depths cannot exceed more than three feet."

3. "Flood velocities cannot exceed more than three feet per second."

4. "No evidence of flood-related erosion. Flood erosion will be determined by location of the project site in relationship to channel migration boundaries adopted by the local government."

Ecology determined that the Klineburger property did not meet three of the criteria for repair of a substantially damaged structure: (1) adequate flood warning system, (2) base flood depth of three feet or less, and (3) no evidence of flood erosion.[8] So Ecology did not recommend approval of the residence

---

[5] RCW 86.16.041(4).
[6] RCW 86.16.041(4).
[7] RCW 86.16.041(5).
[8] The only criterion that Ecology found was met is the base flood velocities will not exceed three feet per second.

placement. The county agreed and denied the permit.

The Klineburgers appealed to the King County Hearing Examiner. The hearing examiner affirmed the county's decision, finding that Ecology's recommendation bound the county. The Klineburgers appealed to the King County Superior Court. The superior court agreed that the county was bound by Ecology's recommendation, but it reversed Ecology's decision that the Klineburgers' project did not meet the rebuilding requirements.

King County appealed the superior court's ruling to this court. Ecology intervened to defend its decision. We ruled that the Klineburgers should have appealed Ecology's determination to the PCHB and affirmed the hearing examiner.[9] The Klineburgers asked the Washington State Supreme Court to review our decision. Before the Supreme Court acted on their request, the parties reached a settlement agreement; the Klineburgers withdrew their petition for review in exchange for Ecology's reissuing its decision to provide the Klineburgers the opportunity to appeal the decision to the PCHB.

The Klineburgers then appealed to the PCHB. Ecology asked the PCHB to dismiss the appeal on summary judgment. The PCHB decided that the Klineburgers could not show the absence of evidence of flood erosion. The PCHB noted that the Klineburgers did not dispute that their property is located in

---

[9] Klineburger v. King County Dep't of Dev. & Envtl. Servs., 189 Wn. App. 153, 170, 174, 356 P.3d 223 (2015).

the FEMA floodway or channel migration zone. The property's location in a channel migration zone provides evidence of flood-related erosion. So the PCHB decided that the Klineburgers could not meet the fourth condition as a matter of law and granted summary judgment to Ecology.[10]

The Klineburgers appealed to the King County Superior Court. It affirmed the PCHB. The Klineburgers appeal to this court.

ANALYSIS

The Klineburgers challenge WAC 173-158-076(1)(b)'s requirement that a property owner prove "no evidence of flood-related erosion." They claim that this requirement, as applied to property in the channel migration zone, results in a taking, violates substantive due process, and violates equal protection.

As a preliminary matter, we consider the Klineburgers' suggestion, first made at oral argument, that we need not reach their constitutional challenges because of questions of fact about any evidence of erosion. They rely on expert testimony to show that there is no evidence of flood-related erosion on the site. But, as the PCHB concluded, the challenged regulation establishes that the location of the site in the channel migration zone and the FEMA floodway

---

[10] The Klineburgers also argued that 428th Street functions as a flood control device, effectively removing their property from the floodway. But the PCHB agreed with Ecology's argument that Ecology lacked the legal authority to conclude that 428th Street is a flood control device. It decided that only FEMA, not Ecology, can determine that the property was not in the FEMA floodway.

provides evidence of erosion. The Klineburgers do not dispute that their property is located in this zone. Thus, no question of fact exists about the existence of evidence of erosion. So we turn to their constitutional claims.

The Klineburgers conflate their substantive due process and takings challenges. While these challenges involve related analyses, they are distinct, and we address them separately.[11] As the court observed in Presbytery of Seattle v. King County,[12] "[i]t is critical that these two grounds be separately considered and independently analyzed because the remedies for each of these types of constitutional violation are different."[13] When a party challenges a regulation on both grounds, Washington courts address the takings challenge first.[14]

## Takings Challenge

The federal and state constitutions prohibit the government from taking private property for public use without just compensation.[15] "There are two types of takings challenges to land use regulations: facial challenges and 'as applied'

---

[11] Presbytery of Seattle v. King County, 114 Wn.2d 320, 329, 787 P.2d 907 (1990) (stating that a takings challenge and a substantive due process challenge are alternatives and should be analyzed separately).

[12] 114 Wn.2d 320, 329, 787 P.2d 907 (1990).

[13] Presbytery, 114 Wn.2d at 329.

[14] Guimont v. Clarke, 121 Wn.2d 586, 594, 854 P.2d 1 (1993).

[15] U.S. CONST. amend. V ("nor shall private property be taken for public use, without just compensation); CONST. art. I, § 16 ("No private property shall be taken or damaged for public or private use without just compensation having been first made.").

-6-

challenges."[16] The Klineburgers do not make a facial takings challenge, only an as-applied challenge.[17]

Ecology claims that the Klineburgers' "as applied" takings claim is not ripe. We agree. An as-applied takings claim "is not ripe until 'the initial government decision maker has arrived at a definite position, conclusively determining whether the property owner was denied all reasonable beneficial use of its property.'"[18] Here, the PCHB determined that the Klineburgers could not repair a residential structure on their property. But no government entity has made a decision about any other possible use. Ecology asserts that the King County zoning regulations permit the property to be used for other purposes and offers the following examples: as growing crops or raising livestock,[19] as a stable for horses,[20] or as a farmers market.[21] Thus, the record before this court does not

---

[16] Peste v. Mason County, 133 Wn. App. 456, 471, 136 P.3d 140 (2006).

[17] In any case, a facial challenge would fail. "The test for a facial challenge is a high one." Guimont, 121 Wn.2d at 605. To prevail on a facial takings challenge to a state regulation, a landowner must show that "a regulation denies all economically viable use of any parcel of regulated property." Presbytery, 114 Wn.2d at 335. Here, the regulation applies only to residential use and thus does not preclude other economically viable uses.

[18] Guimont v. City of Seattle, 77 Wn. App. 74, 85, 896 P.2d 70 (1995) (internal quotation marks omitted) (quoting Orion Corp. v. State, 109 Wn.2d 621, 632, 747 P.2d 1062 (1987)). In a facial takings challenge, however, landowners need not exhaust administrative remedies. Guimont, 121 Wn.2d at 605.

[19] KING COUNTY CODE 21A.08.090.

[20] KING COUNTY CODE 21A.08.050.

[21] KING COUNTY CODE 21A.08.070.

support a finding that the Klineburgers have been denied all reasonable beneficial use of their property.

The Klineburgers contend that their claim is ripe because further administrative proceedings are futile. A court will not require that a party exhaust administrative remedies if doing so would be futile.[22] The Klineburgers assert that exhaustion is futile in this case because the PCHB does not have authority to hear their constitutional claims. "An administrative tribunal is without authority to determine the constitutionality of a statute, and, therefore, there is no administrative remedy to exhaust."[23] The PCHB noted this limitation in its order denying reconsideration when it declined to consider the Klineburgers' equal protection argument.[24] But the Klineburgers' as-applied takings challenge (and the substantive due process challenge as well) does not contest the facial constitutionality of the regulation. It claims a violation as applied to the Klineburgers. This requires development of a factual record. Thus, they do not show that further administrative proceedings would be futile.

---

[22] Presbytery, 114 Wn.2d at 338.

[23] Yakima County Clean Air Auth. v. Glascam Builders, Inc., 85 Wn.2d 255, 257, 534 P.2d 33 (1975).

[24] "An additional problem with the Klineburgers' new theory is that it is based on alleged equal protection violations under the constitution. Even if this argument had been raised in a timely fashion, and not after the final decision had already been issued, the Board lacks jurisdiction over these types of constitutional arguments." (citing Moore v. Ecology, No. 02-207 (Wash. Pollution Control Hr'gs Bd. Apr. 14, 2003) (quoting Yakima Clean Air Auth., 85 Wn.2d at 257)).

Their claim also fails on its merits. A court begins its evaluation of an as-applied takings challenge by asking two questions. First, does the challenged regulation go beyond safeguarding the public interest to providing a public benefit?[25] Second, does it destroy a fundamental attribute of property ownership?[26] If the regulation merely safeguards the public without providing a benefit and does not destroy a fundamental attribute of ownership, no taking occurs; the court proceeds to evaluate any substantive due process claim.[27]

Here, WAC 173-158-076(1)(b) does not go beyond safeguarding the public interest or destroy a fundamental attribute of ownership. It does not provide a public benefit. The ban on residential development in floodways prevents harm, rather than provides a public benefit.[28] And the Klineburgers have not shown any inability to possess their property, to exclude others, or to sell their property. The Klineburgers are prohibited only from building a residential structure on their property. This does not infringe on a fundamental attribute of ownership. No taking has occurred.

---

[25] Guimont, 121 Wn.2d at 594-95.
[26] Guimont, 121 Wn.2d at 595.
[27] Guimont, 121 Wn.2d at 595.
[28] See RCW 86.16.010; Maple Leaf Inv'rs, Inc. v. Dep't of Ecology, 88 Wn.2d 726, 730, 565 P.2d 1162 (1977).

## Substantive Due Process

We next consider the Klineburgers' substantive due process claim. To determine whether a regulation violates due process, courts apply the following three-prong test: (1) is the regulation aimed at achieving a legitimate public purpose; (2) does it use means that are reasonably necessary to achieve that purpose; and (3) is it unduly oppressive on the landowner.[29] The Klineburgers claim that the regulation here is unduly oppressive.

To determine if a statute is unduly oppressive, courts weigh the fairness of the burden placed on the property owner against the interests of the public.[30] On the public's side, relevant factors include the seriousness of the public problem, the extent to which the owner's land contributes to it, the degree to which the proposed regulation solves it, and the feasibility of less oppressive solutions.[31] Factors on the landowner's side include the amount and percentage of value loss, the extent of remaining uses, past, present, and future uses, the temporary or permanent nature of the regulation, the extent to which the owner should have anticipated the regulation, and how feasible it is for the owner to alter the uses.[32]

Ecology claims that the Klineburgers' substantive due process claim is also unripe. We agree. The record must include all the facts needed to apply

---

[29] Presbytery, 114 Wn.2d at 330.
[30] Guimont, 121 Wn.2d at 610.
[31] Guimont, 121 Wn.2d at 610 (quoting Presbytery, 114 Wn.2d at 331).
[32] Guimont, 121 Wn.2d at 610 (quoting Presbytery, 114 Wn.2d at 331).

the three-prong test before a substantive due process claim is ripe.[33]   In

Presbytery, the court decided that exhaustion of administrative remedies was

necessary to evaluate the challenge.[34]   The Supreme Court observed that "it

might be possible to determine that the regulation was aimed at achieving a

legitimate public purpose and that it used means to achieve that purpose."[35]   But

the court decided that with its limited record it was impossible to determine if the

regulation was unduly oppressive:  "Without knowledge of the uses to which this

property can legally be put, it is not feasible to consider the factors which help to

determine 'undue oppressiveness.'"[36]

Here, the record is similarly insufficient to determine the exact extent of

the injury to the Klineburgers because the record says almost nothing about

possible nonresidential uses of the property.  Because the Klineburgers' claim

relies primarily on an argument about their property's value and potential uses,

their claim is not ripe for review.

The Klineburgers' claim also fails on its merits because the Klineburgers

do not show that the regulation is unduly oppressive.  "Where the courts have

_____

[33] See Presbytery, 114 Wn.2d at 337; but see Peste, 133 Wn. App. at 474, 475-76, 476 n.13 (stating that "[s]ubstantive due process claims ripen immediately because the harm occurs at the time of the violation" and applying the balancing test even though it was unclear from the record what economic loss the landlord suffered).

[34] Presbytery, 114 Wn.2d at 337.

[35] Presbytery, 114 Wn.2d at 337.

[36] Presbytery, 114 Wn.2d at 337.

held that a regulation was unduly oppressive, the regulation shifted the cost of a public policy to a private landowner."[37] But "regulations were not unduly oppressive when the regulations targeted a particular behavior or condition that contributed to a public problem."[38] Here, the limitation on development does not require the Klineburgers to directly pay for a public problem. Rather, it requires them to limit an activity that will add directly to a public problem.[39] Further, the Klineburgers acknowledge the seriousness of flooding to private property damage, health, and safety. They have not provided evidence to show the extent of adverse economic impact on their property. Thus, on our record, the balancing test weighs in favor of Ecology.

The Klineburgers also argue that they are entitled to an amortization period. "Although found to be detrimental to important public interests, nonconforming uses are allowed to continue based on the belief that it would be unfair and perhaps unconstitutional to require an immediate cessation of a nonconforming use."[40] But while justice to the property owner may require continuation of an existing nonconforming use, "substantial injustice to the

---

[37] Cradduck v. Yakima County, 166 Wn. App. 435, 447, 271 P.3d 289 (2012) (citing Guimont, 121 Wn.2d at 611-13; Sintra, Inc. v. City of Seattle, 119 Wn.2d 1, 22, 829 P.2d 765 (1992)).
[38] Cradduck, 166 Wn. App. at 447.
[39] Cradduck, 166 Wn. App. at 451.
[40] Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wn.2d 1, 7, 959 P.2d 1024 (1998).

remainder of the community follows from the extension and expansion of that use."[41] So nonconforming uses are disfavored.[42]

Here, the floodway regulations include a reasonable phasing-out period. These regulations do not require that all residential structures in the floodway be destroyed. The relevant laws merely prohibit new construction or reconstruction, thus phasing out nonconforming uses. The challenged regulation also eases the harshness of the construction restrictions.

We also note that the challenged restrictions existed at the time the Klineburgers purchased their property. Presumably, they paid a price that reflected the diminished property value.[43] This further undercuts their claim of injustice in Ecology's application of restrictions to them without an amortization period.

## Equal Protection

Finally, the Klineburgers contend that Ecology's decision violated their equal protection rights. Because this case involves no suspect or semi-suspect class or threat to a fundamental right, we use the rational basis level of scrutiny to evaluate their challenge.[44] Under the rational basis test, legislation survives a

---

[41] Anderson v. Island County, 81 Wn.2d 312, 324, 501 P.2d 594 (1972).

[42] Anderson, 81 Wn.2d at 324.

[43] See Hoover v. Pierce County, 79 Wn. App. 427, 434, 903 P.2d 464 (1995).

[44] State v. Manussier, 129 Wn.2d 652, 673, 921 P.2d 473 (1996).

constitutional challenge if (1) the legislation applies equally to all members of the designated class, (2) there are reasonable grounds to distinguish between those within and those without the class, and (3) the classification has a rational relationship to the proper purpose of the legislation.[45] In other words, the law must be rationally related to a legitimate state interest.[46] The relationship of a classification to its goal must not be so attenuated as to render the distinction arbitrary or irrational.[47]

First, the Klineburgers fail to show the legislation does not apply equally to all members of the designated class. This is because they misidentify the regulated class. The Klineburgers identify the class as applicants for repair of substantially damaged residential structures in the channel migration zone. But they challenge the regulation's per se rule for repairing substantially damaged property located in both the channel migration zone and the FEMA floodway.[48] Thus, the appropriate class is property owners with substantially damaged structures located in the FEMA floodway and the channel migration zone. Because the Klineburgers mischaracterize the class and base their equal protection argument on the incorrect class, they do not show unequal treatment.

---

[45] DeYoung v. Providence Med. Ctr., 136 Wn.2d 136, 144, 960 P.2d 919 (1998).

[46] DeYoung, 136 Wn.2d at 144.

[47] Margola Assocs. v. City of Seattle, 121 Wn.2d 625, 651, 854 P.2d 23 (1993).

[48] WAC 173-158-076(1).

-14-

To show unequal treatment, the Klineburgers rely on evidence that the county allowed other property owners in the channel migration zone to build residential structures. But these properties were not located entirely within the floodway. Further, the residential structures on these lots were built on a part of the property located outside the floodway. Thus, the Klineburgers do not show unequal treatment.

In addition, a rational basis exists for treating landowners of property located in both the floodway and channel migration zone differently from other landowners. Here, the stated purpose of flood-related legislation is to protect public and private property from flood damage.[49] Limiting construction in designated floodways is rationally connected to this concern.

The Klineburgers also assert that no rational reason exists for treating applications to repair substantially damaged property differently from other construction applications. Because they rely on a misunderstanding of the law, their claim fails. They claim the regulation establishes a stricter standard for landowners seeking to rebuild substantially damaged property than for landowners seeking to build new construction. But the regulation actually provides a less stringent standard for property owners with substantially damaged property. State law prohibits building new residential structures located

---

[49] RCW 86.16.010.

in the floodway.[50] The law provides a narrow exception to landowners with substantially damaged property if they can meet certain criteria.[51] The Klineburgers' real problem is that their property does not meet this standard. An application to build a new residential dwelling on their property or replace an older structure would also have been denied.[52] Thus, they fail to establish an equal protection issue based on this distinction.

For these reasons, the Klineburgers' equal protection claim fails.

## CONCLUSION

We affirm. The Klinburgers' takings and substantive due process claims are not ripe. Their equal protection claim fails because the challenged regulation is rationally related to a legitimate government interest.

WE CONCUR:

---

[50] RCW 86.16.041(2)(a).
[51] RCW 86.16.041(2)(a); WAC 173-158-076(1).
[52] RCW 86.16.041(2)(a).

-16-