**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| PREDATORS OF THE HEART, a Washington nonprofit corporation, <br><br> Respondent, <br><br> v. <br><br> SKAGIT COUNTY, a municipal corporation; EDWARD and LYNNE BORLIN; DAVID and PAMELA KNUTSEN; NOLAN BERLIN and MILLICENT SWIETZER; and KEVIN AND JENNY WELCH, <br><br> Appellants. | No. 86894-2-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

MANN, J. — Predators of the Heart (Predators) applied to Skagit County for a special use permit to operate its wildlife preserve in Anacortes. The Skagit County hearing examiner denied Predators' application concluding that it did not comply with state law and county code for dangerous wild animals. Predators petitioned for judicial review under the Land Use Petition Act (LUPA), chapter 36.70C RCW, and the superior court affirmed in part and reversed in part.

We reverse the superior court and affirm the hearing examiner's decision.

I

The facts are undisputed. Predators is a 501(c)(3) nonprofit organization. It owns 10 acres of land in Anacortes, Washington. The property is zoned rural reserve.

The property is bordered to the north by Anacortes Community Forest Lands, to the west by undeveloped forest land, to the east by a 10-acre lot with a single-family residence, and to the south by an easement road and several 5-acre lots containing single-family residences.

Since 2001, Predators has operated an animal preserve and a wildlife education and conservation center. Predators houses a wide variety of animals including wolf-hybrids, alligators, cougars, and more. All of the wolf-hybrids were born at the facility.

In 2021, three wolf-hybrids escaped and killed a neighbor's dog. The wolf-hybrid responsible for the killing was euthanized, and the other two wolf-hybrids were designated by animal control as "dangerous dogs."

In March 2022, Predators applied to Skagit County for a special use permit to operate a wildlife preserve under Skagit County Code 14.16.320(4). The Skagit County hearing examiner held a three-day open record hearing. A group of neighbors—Lynn and Edward Borlin, Pamela and David Knutsen, Nolan Berlin, Millicent Swietzer, and Kevin and Jenny Welch (collectively, neighbors)—participated in the hearing and are parties to this appeal.

The hearing examiner denied the special use permit concluding that Predators did not meet any of the exceptions to Washington's dangerous wild animals act, RCW 16.30.020. Predators unsuccessfully appealed to the Skagit County Board of Commissioners.

Predators petitioned the Skagit County Superior Court for review under LUPA. The superior court granted in part and denied in part the appeal. The superior court

concluded that the hearing examiner erred in the interpretation of the exceptions in RCW 16.30.020(1)(c) and RCW 16.30.020(1)(k).

The County and the neighbors appeal.

II

A

This case is governed by LUPA. In reviewing a LUPA decision, we sit in the same position as the superior court and apply the LUPA standards of review directly to the hearing examiner's decision. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Our review is confined to the record created before the hearing examiner. RCW 36.70C.120(1).

On appeal, the party who filed the LUPA petition—here, Predators—bears the burden to establish that the land use decision was erroneous. Fuller Style, Inc. v. City of Seattle, 11 Wn. App. 2d 501, 507, 454 P.3d 883 (2019). Relevant here, we will reverse a hearing examiner's decision when:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise.

RCW 36.70C.130(1)(b). Alleged errors of law are reviewed de novo. Klineburger v. King County Dep't of Dev. & Env't Servs. Bldg., 189 Wn. App. 153, 164, 356 P.3d 223 (2015). Standard (b) does not require that we "give complete deference, but rather 'such deference as is due.'" Dep't of Transp. v. City of Seattle, 192 Wn. App. 824, 838-39, 368 P.3d 251 (2016) (quoting Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 753, 317 P.3d 1037 (2014)).

Interpretation of statutes and ordinances is a question of law reviewed de novo. Whatcom County Fire Dist. No. 21 v. Whatcom County, 171 Wn.2d 421, 427, 256 P.3d 295 (2011). The primary purpose of statutory interpretation is to determine and effectuate legislative intent. Swinomish Indian Tribal Cmty. v. Dep't of Ecology, 178 Wn.2d 571, 581, 311 P.3d 6 (2013). "We determine plain meaning 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Swinomish, 178 Wn.2d at 581 (internal quotation marks omitted) (quoting TracFone Wireless, Inc. v. Dep't of Revenue, 170 Wn.2d 273, 281, 242 P.3d 810 (2010)).

In analyzing exceptions to statutory provisions, we consider the statutory context, related statutes, and the entire statutory scheme. Swinomish, 178 Wn.2d at 581. We review the related statutes to understand the general principles to which the exception applies. Swinomish, 178 Wn.2d at 582. Lastly, we note that generally "exceptions to statutory provisions are narrowly construed in order to give effect to legislative intent underlying the general provisions." Swinomish, 178 Wn.2d at 581 (quoting R.D. Merrill Co. v. Pollution Control Hr'gs Bd., 137 Wn.2d 118, 140, 969 P.2d 458 (1999)).

B

With limited exception, potentially dangerous wild animals are banned under both state statute and the Skagit County Code. See RCW 16.30.030; Skagit County Code 7.04.030. The intent of the dangerous wild animals act is to "protect the public against the serious health and safety risks that dangerous wild animals pose to the community." RCW 16.30.005. A potentially dangerous wild animal is defined to include a variety of animals including bears, hyenas, elephants, tigers, alligators, and more. RCW

-4-

16.30.010(2). The state statute includes wolves but excludes wolf-hybrids from the definition of a potentially dangerous wild animal. RCW 16.30.010(2)(a)(i)(B). In contrast, Skagit County's potentially dangerous wild animals law includes all the animals listed in the state statute and "[a]ll animals of the family Canidae (as dogs, wolves, jackals, or foxes) and their hybrids, except for the domestic dog Canis lupus familiaris . . . [and] all cougars." Skagit County Code 7.04.010.

The state dangerous wild animals act provides an exception to the ban on potentially dangerous wild animals to certain institutions, entities, and persons. <u>See</u> RCW 16.30.020. Skagit County adopts the state exemptions in their entirety. Skagit County Code 7.04.020 ("The provisions of this chapter do not apply to the persons and entities listed in RCW 16.30.020."). The following two exceptions are relevant to this appeal:

> (c) Duly incorporated nonprofit animal protection organizations, such as humane societies and shelters, housing an animal at the written request of the animal control authority or acting under the authority of this chapter;
>
> (k) Domesticated animals subject to this title or native wildlife subject to Title 77 RCW.

RCW 16.30.020(1)(c), (k).

1

Predators argues that the hearing examiner's interpretation of the animal control exception in RCW 16.03.020(1)(c) was a clear error of law. We disagree.

The hearing examiner concluded that Predators did not meet the exception in RCW 16.30.020(1)(c) that provides "duly incorporated nonprofit animal protection organizations, such as humane societies and shelters, <u>housing an animal at the written</u>

request of the animal control authority" are exempt from the chapter. (Emphasis added.) The hearing examiner explained that while Predators produced documentation of a written request from an animal control authority to house some of its animals, it failed to produce a similar request to house any of the wolf-hybrids on the property. Therefore, the hearing examiner concluded that the exception did not apply because Predators did not house its wolf-hybrids at the written request of an animal control authority.

The superior court disagreed. As the court reasoned, the statute does not use the language "each potentially dangerous animal" or "the potentially dangerous animal" which demonstrates that the legislature did not intend for the exception to apply to each potentially dangerous wild animal. The court concluded that an organization that houses one potentially dangerous wild animal at the written request from animal control can then house other potentially dangerous wild animals as well.

It is undisputed that Predators received at least some of its animals at the written request of animal control authorities. But it is also undisputed that not all of its animals on its property were acquired at the written request of animal control. Predators argues that the statute allows a nonprofit housing at least one potentially dangerous wild animal at the written request of animal control to house other potentially dangerous wild animals, even if they were not received at the written request of animal control. We disagree.

First, the intent of the dangerous wild animals act is to protect the public from potentially dangerous wild animals. RCW 16.30.005. The exceptions to the statute should therefore be narrowly construed to further that purpose. See Swinomish, 178

Wn.2d at 582.  Under the statute, a nonprofit animal protection organization housing <u>an</u> animal at the written request of an animal control authority is exempt from the chapter. The statute is plain on its face that the exception is specific to a particular animal housed at the written request of an animal control authority.  This reading of the statute furthers the legislature's purpose to protect the public from potentially dangerous wild animals.  It could not have been the legislature's intent to allow a nonprofit housing a potentially dangerous wild animal at the written request of animal control to then house any potentially dangerous wild animals that it wants.[1]

Second, other portions of the statute use the plural "animals" rather than the singular "an animal."  <u>See</u> RCW 16.30.020(1)(h) (excluding research facilities for the species of animal for which they are registered); RCW 16.30.020(1)(i) (excluding circuses that offer performances by live animals); RCW 16.30.020(1)(l) (excluding a person displaying animals at a state-approved fair).  The neighbors argue that the singular form indicates that the statute should be read narrowly—meaning, for the exception to apply, each potentially dangerous wild animal must have been received at the written request of animal control.  We agree.  The legislature chose not to use the plural form "animals" which could permit a broader reading of the statute.  The use of "an" indicates that the legislature intended the exception to apply narrowly to the specific potentially dangerous wild animal that is housed at the written request of animal control.

---

[1] Even if the statute were ambiguous, which we conclude it is not, the reading set forth by Predators would lead to absurd results.  The fact that at least some of Predators' animals are received from animal control does not mean that Predators can then house any potentially dangerous wild animal. To the read the statute more broadly would result in an absurd and unintended reading.

The hearing examiner correctly concluded that the animal control exception in RCW 16.30.020(1)(c) did not apply to Predators' facility.

2

Predators next argues that the hearing examiner erred in concluding that the domesticated animals exception in RCW 16.30.020(1)(k) did not apply.  We disagree.

RCW 16.30.020(1)(k) provides that "[d]omesticated animals subject to this title or native wildlife subject to Title 77 RCW" are exempt from the chapter.  Neither the state dangerous wild animal act nor county code defined what constitutes a domesticated animal.

But unlike state law, Skagit County bans wolf-hybrids as potentially dangerous wild animals.  Compare SCC 7.04.010(1)(b)-(c) with RCW 16.30.010(2)(a)(i)(A)-(B). This is permissible because state law explicitly permits counties to adopt more restrictive regulations concerning potentially dangerous wild animals.  RCW 16.30.050.

The hearing examiner concluded that the exception did not apply explaining:

> If wolf-dogs were exempt from the dangerous animal regulations by operation of the domesticated animal exception, then the County's deliberate move in 2014 to prohibit the keeping of wolf-dogs would have been an exercise in futility.  It cannot be the case that the County would both adopt an ordinance to prohibit [wolf-dogs. . . which] the County believes are "inherently dangerous" and "pose unique threats to human life," while also subjecting the new prohibition to an exception for domesticated animals that would nullify the prohibition.  On the contrary, the County's findings in support of its 2014 ordinance . . .  specifically state that wolf-dogs are "not normally domesticated" in the eyes of the County.

The superior court disagreed, concluding that the domesticated animals exception is a factual inquiry that should be determined on a case-by-case basis. Therefore, the superior court concluded that the case should be remanded to the

hearing examiner to determine whether any of Predators' wolf-hybrids are domesticated.

Predators argues that because the term "domesticated animals" is not defined, whether a potentially dangerous wild animal is domesticated should be determined case-by-case. We disagree.

The plain language of the statute reveals that it does not exempt any domesticated animal. Instead, the statute provides that the animals must be (1) domesticated and (2) subject to Title 16. See RCW 16.30.020(1)(k). This plain language shows that the statute was intended to only apply to domesticated animals subject to Title 16, which are dogs and livestock. There is nothing in Title 16 RCW that regulates wolf-hybrids or that identifies them as domesticated animals.[2]

The hearing examiner did not err in concluding the domesticated animals exception in RCW 16.30.020(1)(k) did not apply to Predators' facility.

We reverse the superior court and affirm the hearing examiner's decision.

_____Mann, J._____

WE CONCUR:

_____Feldman, J._____          _____Chung, J._____

---

[2] Predators notes that the County's findings in support of the 2014 ordinance defining wolf-hybrids as potentially dangerous wild animals states that wolf-hybrids are "not normally domesticated" which means that there is a possibility that they could be. But this is not relevant to the analysis because, as mentioned, the statute only applies to domesticated animals subject to Title 16—where there is no mention of wolves or wolf-hybrids as domesticated animals.